UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARLOS ALVAREZ CHICAS, ALONSO VILLATORO,
MISAEL ALEXANDER MARTINEZ CASTRO, ANGEL
MARTINEZ, EDWIN ULLOA MOREIRA and MATEO
UMAÑA individually and on behalf of all others similarly
situated,

**Case No. 21-cv-09014
(PAE)(SDA)**

Plaintiffs,

*- against -*

KELCO CONSTRUCTION, INC., KELCO
LANDSCAPING, INC., E.L.M. GENERAL
CONSTRUCTION CORP. D/B/A KELLY'S CREW, JOHN
KELLY and JOSEPH PROVENZANO,

Defendants.

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT AUTHORIZED
NOTICE PURSUANT TO 29 U.S.C. § 216**

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
5 E. Main Street
Huntington, NY 11743
631.824.0200
steven.moser@moserlawfirm.com
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................... 1

LEGAL ARGUMENT ................................................................................................................... 4

   1.   STANDARD ............................................................................................................... 4

   2.   PLAINTIFFS' ALLEGED FLSA VIOLATIONS ........................................................ 5

       2.1.   Unpaid Travel Time for Employees Other Than Drivers .......................... 5

       2.2.   Unpaid Travel Time for Drivers ............................................................... 6

       2.3.   Aggregating Hours Worked for Related Entities ...................................... 6

   3.   THE PUTATIVE COLLECTIVE ACTION MEMBERS ARE SIMILARLY SITUATED
      TO THE PLAINTIFFS ................................................................................................ 7

       3.1.   ELM Hourly Employees are Similarly Situated to the Plaintiffs Misael Alexander
            Martinez Castro, Angel Martinez, Mateo Umaña and Edwin Ulloa (the "ELM
            Plaintiffs") ............................................................................................... 8

       3.2.   ELM and Kelco Drivers are Similarly Situated to Plaintiffs Carlos Alvarez Chicas,
            Alonso Villatoro, A. Martinez and Ulloa .................................................. 8

       3.3.   Employees Who Were Paid by Both ELM and Kelco for Work Performed During
            the Same Workweek are Similarly Situated to Plaintiff Alonso Villatoro ................ 9

   4.   DISCOVERY OF NAMES, ADDRESSES, TELEPHONE NUMBERS, EMAIL
      ADDRESSES, WORK LOCATIONS, POSITION AND DATES OF EMPLOYMENT IS
      PROPER ................................................................................................................... 10

   5.   THE PROPOSED METHODS OF DISSEMINATION ARE APPROPRIATE .............. 11

       5.1.   Leave to give notice electronically via email and text message, in addition to
            traditional mail, is efficient and are effective means of reaching the putative
            collective action members .......................................................................... 11

       5.2.   Defendants Should be Directed to Post Notice ......................................... 12

       5.3.   Sending a Reminder Notice is Appropriate ............................................... 13

   6.   THE PROPOSED NOTICE IS FAIR AND ACCURATE ........................................... 13

   7.   IT IS PROPER TO GIVE NOTICE TO PROSPECTIVE PLAINTIFFS WHO WERE
      EMPLOYED AT ANY TIME DURING THE THREE YEAR PERIOD PRECEDING
      THE FILING OF THE COMPLAINT AND UP TO THE PRESENT TIME. ................ 13

CONCLUSION .......................................................................................................................... 14

## PRELIMINARY STATEMENT

Kelco Construction, Inc. ("Kelco") and E.L.M. General Construction Corp. d/b/a Kelly's Crew (ELM) are landscape construction and maintenance companies performing work in the New York metropolitan area.  Plaintiffs, laborers and construction workers employed by the Defendants, commenced this action on November 2, 2021.  Plaintiffs bring this action as a collective action under 29 U.S.C. § 216(b)  for FLSA overtime violations, as well as a class action pursuant to Rule 23 for violations of the New York Labor Law ("NYLL") and to recover prevailing wages to which the Plaintiffs are entitled as third party beneficiaries.[1]  Plaintiffs now move for conditional certification and notice pursuant to 29 U.S.C. § 216.

The Plaintiffs Carlos Alvarez Chicas ("Alvarez") and Alonso Villatoro ("Villatoro") were employees of Kelco who were sometimes received wages from ELM.  Misael Alexander Martinez Castro ("M. Martinez"), Angel Martinez ("A. Martinez"), Edwin Ulloa Moreira ("Ulloa"), and Mateo Umaña ("Umaña")(collectively referred to as the "ELM Plaintiffs" were paid wages by ELM only.  The operative pleading (Second Amended Complaint) which was filed on December 23, 2022 (ECF No.  alleges the existence of common policies which violated the overtime provisions of the FLSA, including:

(1) **Failure to aggregate hours worked for Kelco and ELM.**  Kelco and ELM are related entities who each issued payroll checks to the same employees covering the same workweek. However, the hours paid by Kelco and ELM were not aggregated for the purpose of calculating overtime under the FLSA and the NYLL, and overtime hours were not paid at 1 ½ times the employee's regular rate of pay, resulting in the failure to properly pay overtime.

---

[1] The New York Labor Law claims include unpaid overtime (12 NYCRR § 142-2.2), unpaid regular wages (NYLL §§ 191, 193 and 198), wage notice claims (NYLL §§ 195-1 and 198), and wage statement claims (NYLL §§ 195-3 and 198).

(2) **Failure to pay for compensable travel time.** ELM hourly employees and Kelco

drivers were required to report each morning to the Defendants' facility located at 25

Newton Place, Hauppauge, New York (the "facility"). Upon arriving the employees

would load company trucks with materials and tools. They would then travel to

worksites in the New York Metropolitan area. At the end of the workday, Kelco

drivers would transport employees back to the park and ride and then return to the

facility.  ELM employees returned directly to the Hauppauge facility where they

would unload and clean the trucks. Plaintiffs were not paid from the time they

reported for work or began working until the end of the workday.

Plaintiffs, by this motion, seek:

(1) Leave to give notice of this action as a representative collective action pursuant to the
FLSA , 29 U.S.C. § 216, to the following groups (collective classes):

    a.  All hourly Kelco employees who, at any time during the three year period
prior to the filing of the complaint and up to the present time, received
paychecks from ELM for the same workweek;

    b.  All hourly Kelco employees who drove company vehicles at any time during
the three year period prior to the filing of the complaint and up to the present
time;

    c.  All hourly ELM employees (including drivers) who worked at any time
during the three year period prior to the filing of the complaint and up to the
present time.

(2) Production of three excel spreadsheets (one for each proposed collective class)
containing the name, last known mailing address, email address, cell phone number, job
title, dates of employment with Kelco, and dates of employment with ELM of each
putative collective member within ten (10) business days of this Court's order;

(3) Approval of the proposed FLSA notice of this action and the consent form annexed to
the Notice of Motion as Exhibit 1;

(4) Leave to provide notice by first class mail and email to each putative collective
member in English and Spanish within 10 days of production of the aforementioned excel
spreadsheets;

(5) Leave to send a text message to each putative collective action member in English and Spanish, within 10 days after the production of the excel spreadsheet as follows:

> This message is sent from the Moser Law Firm, P.C., and has been authorized by the Court in in the case of *Alvarez v. Kelco Construction, Inc. et al.,* 21-cv-9014 (PAE)(SDA). If you work or have worked for Kelco Construction, Inc. or E.L.M. General Construction Corp. d/b/a Kelly's Crew at any time since November 2, 2018, you may be entitled to join a lawsuit claiming unpaid overtime compensation. For additional information about the case, including how to join, please (i) respond to this text message, (ii) email legalsupport2@moserlawfirm.com, or (iii) visit www.moserlawfirm.com/kelconotice.com."

(6) An order setting an opt-in period of Sixty (60) days following the date on which the Notice is sent for opt-in members to mail or email completed consent forms to Plaintiffs' Counsel (the "Opt-In Period");

(7) Leave to send a text reminder 30 days before the close of the Opt-In Period as follows:

> This reminder is sent from the Moser Law Firm, P.C. and has been authorized by the Court in the case of *Alvarez v. Kelco Construction, Inc. et al.,* 21-cv-9014 (PAE)(SDA). You should have already received notice of your right to join an overtime lawsuit against Kelco Construction, Inc. and E.L.M. General Construction Corp. d/b/a Kelly's Crew. You are not required to join this lawsuit. However, if you want to participate the deadline to join is _____. If you need further information please (i) text 516-671-1150, (ii) email legalsupport2@moserlawfirm.com, or (iii) visit www.moserlawfirm.com/kelconotice.com."

(8) An order directing the defendants to post the Notice in a prominent location at each jobsite where employees work for the entire duration of the opt-in period, and to file an affidavit of compliance with the posting requirements within ten (10) days of the close of the opt-in period.

In support of this motion for conditional certification, Plaintiffs submit (1) the Second Amended Complaint (2) sample documents obtained via subpoena, including documents from the Defendants' payroll provider and (3) the declarations of the representative Plaintiffs and (4) and the declaration of Steven John Moser. These documents show that:

1. There were at least 50 individuals (other than drivers) who were paid by both Kelco and ELM for work performed during the same workweek during the FLSA period.

Defendants did not aggregate the hours worked for the purposes of computing their FLSA overtime obligations or pay them the proper overtime rate;

2. ELM employees (both driver sand non-drivers) and Kelco drivers were required to report to the Defendants' facility in Hauppauge before travelling to the ELM/Kelco jobsites. Upon arriving at facility they performed work which included carrying tools and materials and loading company vehicles; they then traveled in these company vehicles to the worksites throughout the New Yok metropolitan area; at the end of the workday they returned to the facility, where they would unload the company vehicles; they were not paid from the time they reported until the time they completed their work.  Instead, they were paid for work performed at the jobsite.  Drivers who were responsible for transporting employees, tools and materials to the jobsite who worked for Kelco and/or ELM received a "drive time bonus" of three hours at a low fixed rate regardless of the duration of the workday and regardless of the number of hours actually spent driving for defendants.  Based upon a review of the records, there are at least 75 similarly situated individuals who were paid a "drive time" bonus by ELM during the FLSA time period, and ELM employed approximately 130 other similarly situated laborers during the FLSA time period.

## LEGAL ARGUMENT

### 1.  STANDARD

At [the conditional certification] stage, the evidentiary standard is lenient, and plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.  Courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is considerably less stringent than the requirements for class certification under Federal Rule of Civil Procedure 23. In making this showing, nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required. The standard of proof remains low because the purpose of this first stage

is merely to determine whether "similarly situated" plaintiffs do in fact exist.

*Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452 (E.D.N.Y. 2014) (Lindsay, M.J.) (internal

citations and quotations omitted).

## 2.  PLAINTIFFS' ALLEGED FLSA VIOLATIONS

### 2.1. Unpaid Travel Time for Employees Other Than Drivers

Under the Department of Labor's continuous workday rule (29 C.F.R. § 790.6), cited

with approval by the Supreme Court in *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 134 S. Ct. 870

(2014), all time between the beginning and ending of an employee's workday is compensable,

and "includes all time within that period whether or not the employee engages in work

throughout all of that period." 29 C.F.R. § 790.6. Travel taking place at any time during the

continuous workday is compensable under the FLSA. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37, 126

S. Ct. 514, 525 (2005).  Moreover, the regulations direct that:

> Where an employee is required to report at a meeting place to receive instructions
> or to perform other work there, or to pick up and to carry tools, the travel from the
> designated place to the work place is part of the day's work, and must be counted
> as hours worked regardless of contract, custom, or practice.

29 C.F.R. § 785.38.

> The performance of other work at such a designated meeting place (even merely
> picking up needed tools or materials), as in this case, similarly triggers at the
> designated meeting place the start of the employee's workday, with the same
> effect on the subsequent travel. . .  Once the start of the workday has been
> triggered in such way(s), any time subsequently spent in getting to another
> location, even under condition(s) which would otherwise make the travel
> excludable (under subsections (1) and/or (2) of section 4(a) of the Portal Act),
> constitutes hours worked under the FLSA regardless of any contract, custom, or
> practice. . . The same principles apply at the end of the day, so that the end of the
> compensable workday occurs at the shop to which the construction workers are
> required to return after the completion of jobsite work for the workday[.]

*Dole v. Enduro Plumbing, Inc.*, 88-cv-7041, 1990 U.S. Dist. LEXIS 20135, at *14-15 (C.D. Cal.

Oct. 16, 1990).

### 2.2. Unpaid Travel Time for Drivers

"An employee who drives a truck, bus, automobile, boat or airplane. . .is working while riding[.]"  29 C.F.R. § 785.41.

> [T]ravel time itself is compensable when work is performed while traveling, such as in this case where the construction workers (especially crew members who themselves do the driving) are responsible for picking up and transporting a truck to the jobsite, not for the sole purpose of transporting only himself alone but also for the purpose of transporting other employee(s), tools or materials[.]

*Dole v. Enduro Plumbing, Inc.*, 88-cv-7041-RMT(Kx), 1990 U.S. Dist. LEXIS 20135, at *15 (C.D. Cal. Oct. 16, 1990).

### 2.3. Aggregating Hours Worked for Related Entities

"[H]ours worked for joint employers may be aggregated" for the purposes of the FLSA. *Acosta v. Fusilli at Miller Place, Inc.*, No. 18-mc-426 (DRH)(SIL), 2018 U.S. Dist. LEXIS 77641, at *12 (E.D.N.Y. May 7, 2018). "Horizontal joint employment may be found where 'one employer employs a worker for one set of hours in a workweek and another employer employs the same worker for a separate set of hours in the same workweek.'" *Suarez v. Murray*, No. 20 Civ. 3514 (JCM), 2021 U.S. Dist. LEXIS 65016, at *16-17 (S.D.N.Y. Apr. 2, 2021) (citing 29 C.F.R. § 791.2(e)(2)).

Although the "vertical" joint employment regulations were invalidated by District Judge Gregory H. Woods, the "horizontal" joint employment regulations applicable in this case were left undisturbed.  *New York v. Scalia,* 490 F. Supp. 3d 748, 780 (S.D.N.Y. 2020).   Moreover, despite the fact that the Department of Labor later rescinded the joint employer regulations in their entirety, the DOL "did not reconsider the substance of its longstanding horizontal joint employment analysis." Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule, 86 FR 40939-01 at * 40954. The Department of Labor further explained:

The focus of a horizontal joint employment analysis will continue to be the degree of association between the potential joint employers, as it was in the Joint Employer Rule and the prior version of part 791. As has been the Department's position for decades, the association will be sufficient to demonstrate joint employment in the following situations, among others: (1) There is an arrangement between the employers to share the employee's services; (2) one employer is acting directly or indirectly in the interest of the other employer in relation to the employee; or (3) the employers share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

*Id.*

### 3.  THE PUTATIVE COLLECTIVE ACTION MEMBERS ARE SIMILARLY SITUATED TO THE PLAINTIFFS

"The standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification." *Laroque v. Domino's Pizza, L.L.C.*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008);  *Jiao v. Shang Shang Qian Inc.*, 2021 U.S. Dist. LEXIS 183438, at *9 (E.D.N.Y. Sept. 24, 2021) (citing *Jeong Woo Kim v. 511 E. 5th St., L.L.C.*, 985 F. Supp. 2d 439, 447 (S.D.N.Y. 2013)) ("At the preliminary stage of an FLSA collective certification, 'whether [the plaintiffs] will eventually succeed on the merits of his FLSA claim is immaterial.'").  "Once the [p]laintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003) (citing *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997)); *Williams v. Movage, Inc.*, No. 17 Civ. 2628 (KPF), 2018 U.S. Dist. LEXIS 68892, at *13-14 (S.D.N.Y. Apr. 24, 2018).

### 3.1. ELM Hourly Employees are Similarly Situated to the Plaintiffs Misael Alexander Martinez Castro, Angel Martinez, Mateo Umaña and Edwin Ulloa (the "ELM Plaintiffs")

The ELM Plaintiffs were reported to the Hauppauge facility each morning before traveling to the worksite, which was usually located in New York City.[2]  They usually reported before 4:30 A.M.[3] They picked up and carried tools and materials before leaving the Hauppauge facility and after returning to the Hauppauge facility.[4]  They were not paid for travel time.[5] According to payroll records obtained, there are at collectively least 130 other similarly situated hourly employees who worked for ELM for the period from June 23, 2019 to May 14, 2022 alone.[6]  The proposed collective consists of employees who worked at any time from November 2, 2018 until the present, and so the actual number of similarly situated employees is likely to be far in excess of 130.

### 3.2. ELM and Kelco Drivers are Similarly Situated to Plaintiffs Carlos Alvarez Chicas, Alonso Villatoro, A. Martinez and Ulloa

Plaintiffs Alvarez, Villatoro, A. Martinez and Ulloa were required to report to the Defendants' facility.[7]  At times during their employment they were responsible for transporting other employees, tools and materials in company vehicles to worksites.[8]  The combined daily travel time to and from the worksite sometimes exceeded 4 ½ hours.[9]  According to the ADP payroll records, at least the Plaintiffs there were at least 75 Kelco and/or ELM employees who were paid a "drive time" bonus by ELM during the FLSA period.[10]  All drivers were similarly situated in that they were not paid from the time they were required to report until they arrived at

---

[2] Declarations of M. Martinez ¶ 5, A. Martinez ¶ 5, \Ulloa ¶ 5; Umaña ¶ 5.
[3] Declarations of M. Martinez ¶ 5, Ulloa ¶ 5; Umaña ¶ 5.
[3] Declarations of M. Martinez ¶ 6, A. Martinez ¶ 6, Ulloa ¶ 6; Umaña ¶ 6.
[4] *Id.*
[5] Declarations of M. Martinez ¶ 7, A. Martinez ¶ 7, Ulloa ¶ 7; Umaña ¶ 7.
[6] Moser Declaration ¶ 10.
[7] Declarations of Alvarez ¶ 5, Villatoro ¶ 6, Ulloa ¶ 5.
[8] Declarations of Alvarez ¶ 2, Villatoro ¶ 3, Ulloa ¶ 2, Umaña ¶ 2.
[9] Moser Declaration ¶ 11.
[10] Declarations of Alvarez A Martinez ¶ 10¶ Ulloa ¶ 2.

the Hauppauge facility at the end of the workday and were not paid for travel time at 1 ½ times

their regular rates.[11] Instead, they were paid a "drive time" bonus which was not dependent upon

the actual time spent driving, but was instead usually calculated by multiplying a low "drive time"

rate" by 3.[12]

### 3.3. Employees Who Were Paid by Both ELM and Kelco for Work Performed During the Same Workweek are Similarly Situated to Plaintiff Alonso Villatoro

Alonso Villatoro was paid by both Kelco and ELM for work ostensibly performed during

the same workweek.  For example, Kelco paid Alonso Villatoro for 32 hours of regular wages at

an hourly rate of $46.85 for the workweek ending July 27, 2019.[13]  During this same workweek,

ELM paid Villatoro for an additional 21 hours at a rate of only $15.00 per hour.[14]  A review of

the payroll records for the time period from June 23, 2019 to May 14, 2022 indicates that there

were at least 50 individuals who were paid by both ELM and Kelco for work ostensibly

performed during the same workweek.[15]  The hours were not aggregated for the purposes of

computing Defendants' overtime obligations.[16]  For example, for the workweek ending October

10, 2020 Kelco paid one such employee for 40 hours at $43.48 per hour.  During this same

workweek, ELM paid this same employee for 8 hours at only $30.00 per hour.[17]

Kelco and ELM have denied that they are related entities.  *See* Complaint (ECF No. 1),

and Answer (ECF No. 23), ¶¶ 4, 15, 131. However, "[a]t this stage. . . the Court need not

determine whether the two [entities], in fact, were joint employers."  *Chen v. Lilis 200 W. 57th*

*Corp.*, No. 19-CV-7654 (VEC), 2021 U.S. Dist. LEXIS 8011, at *9 n.5 (S.D.N.Y. Jan. 14, 2021)

---

[11] Declarations of Alvarez ¶¶ 5,7, Villatoro ¶¶ 6, 11, A. Martinez ¶ 7, Ulloa ¶ 7.
[12] Declarations of Alvarez ¶ 7, Villatoro ¶ 11, A. Martinez ¶ 10, Ulloa ¶ 7
[13] Villatoro Decl. ¶ 18; Moser Decl. ¶ 9.
[14] *Id.*
[15] Moser Decl. ¶ 7.
[16] *Id.*
[17] Moser Decl. ¶ 8.

(granting motion for conditional certification where plaintiffs alleged a failure to aggregate

hours).  Furthermore, the following indicators are sufficient to establish a colorable claim:

- The simple fact that there are at least 50 Kelco employees who were paid by ELM for work ostensibly performed during the same workweek and at least 75 Kelco employees who were paid a drive time bonus by ELM during a workweek that they performed work for Kelco strongly suggests that the corporate defendants are related;

- All Kelco and ELM ADP payroll checks are signed by the same individual;[18]

- All Kelco and ELM ADP payroll checks bear the same account number;[19]

- Kelco and ELM share a common offices;[20]

- Defendants "admit that Joseph Provenzano had the authority to hire and fire ELM's employees."  *See* Answer (ECF No. 23, ¶ 54).  "Joe Provenzano is a co-founder of Kelco and is the Executive Operations Manager responsible for all field operations."[21]

For the foregoing reasons, notice should be given to all employees who were paid by both

ELM and Kelco for the same workweek at any time from November 2, 2018 to the present.

## 4.  DISCOVERY OF NAMES, ADDRESSES, TELEPHONE NUMBERS, EMAIL ADDRESSES, WORK LOCATIONS, POSITION AND DATES OF EMPLOYMENT IS PROPER

"The turnover of employee contact information is used to effectuate the FLSA's remedial

purpose." *Sarikaputar v. Veratip Corp.*, No. 1:17-cv-00814 (ALC) (SDA), 2018 U.S. Dist.

LEXIS 147244, at *16 (S.D.N.Y. Aug. 29, 2018) (directing defendants to produce the following

---

[18] Moser Decl. ¶¶ 3-5.
[19] Id.
[20] Declarations of Alvarez ¶ 3, Villatoro ¶ 4, M. Martinez ¶ 3, A. Martinez ¶ 3, Ulloa ¶ 3, Umaña ¶ 3.
[21] Moser Decl. ¶ 6.

information for potential opt-in plaintiffs: "first and last name, last known mailing addresses (including apartment number, if applicable), last known telephone numbers, last known email addresses, work locations, position and dates of employment").

## 5.   THE PROPOSED METHODS OF DISSEMINATION ARE APPROPRIATE

### 5.1. Leave to give notice electronically via email and text message, in addition to traditional mail, is efficient and are effective means of reaching the putative collective action members.

As observed by one Court in 2015:

> The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication.

*Irvine v. Destination Wild Dunes Mgmt.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015)

Many courts now authorize the distribution of notice by email, with some courts finding that notice via email is the new norm. *Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 U.S. Dist. LEXIS 352, at *57 (S.D.N.Y. Jan. 4, 2016) ("Courts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases."); *In re Deloitte & Touche, L.L.P., 20*12 U.S. Dist. LEXIS 12641, at *6 (S.D.N.Y. Jan. 17, 2012) (allowing distribution of notice via email, noting that "[i]n the present age . . . communication through email is the norm"); *Pippins v. KPMG L.L.P.*, No. 11 Civ. 0377 (CM) (JLC), 2012 U.S. Dist. LEXIS 949, at *41 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today, . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate.")

Since communication by text message is likely to increase the percentage of putative collective members receiving and reading the notice, giving notice by text message is appropriate.  According to research published by the Pew Research Center regarding cell phone

use in the U.S. in April 2021, 100% of adults ages 18-49 have some type of cell phone, and 95% of this age group have a smartphone.[22]  Recipients are much more likely to open a text message than an email.  According to an April 2019 report, average open rates for emails were only 25%, while open rates for text messages were 93%.[23]  In sum, people receive text messages more quickly and are more likely to read text messages than emails.

Here sending notice by text message, in addition to regular mail, is even more important because not all putative collective action members are likely to have an email, and *neither the FLSA nor the NYLL require an employer to record the employee's email*.  Text message is "likely to be a viable and efficient means of communicating with many putative collective action."  *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-3624 (RJS), 2015 U.S. Dist. LEXIS 90616, at *16 (S.D.N.Y. July 13, 2015); see also *Chamorro v. Bahman Ghermezian*, No. 12-cv-8159 (TPG), ECF No. 17 ¶ 5 (S.D.N.Y. Feb. 25, 2013) (authorizing dissemination of FLSA § 216(b) notice via text message).

### 5.2. Defendants Should be Directed to Post Notice

Courts "routinely approve requests to post notice", even where potential members will also be notified by mail. *See, e.g., R*osario v. Valentine Ave. Disc. Store, Co.,* 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011) (quoting W*hitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)) (citations omitted); *Malloy v. Richard Fleischman & Assocs., No*. 09 Civ. 322 (CM), 2009 U.S. Dist. LEXIS 51790, 2009 WL 1585979 (S.D.N.Y. June 3, 2009) (ordering that in addition to notice by mail, "notice shall be posted in each workplace where potential collective action members are employed"); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 130 (S.D.N.Y. 2014), *Schear v. Food Scope Am., Inc.* (*AT*), No. 12 Civ. 594 (AT), 2014

---

[22] See https://www.pewresearch.org/internet/fact-sheet/mobile/ (last visited 12/19/2022).
[23] See https://www.inc.com/dakota-shane/the-founder-of-nations-fastest-growing-sms-marketing-startup-shares-his-text-message-marketing-secrets.html (last visited 12/ 19/2022)

U.S. Dist. LEXIS 3454, 2014 WL 123305 (S.D.N.Y. Jan. 8, 2014) (granting Plaintiffs' request

that notice be posted in a "conspicuous place where putative plaintiffs are likely to see it"); *Chen*

*v. Oceanica Chinese Rest., Inc.*, No. CV 13-4623 (FB) (VVP), 2014 U.S. Dist. LEXIS 46007, at

\*30, 2014 WL 1338315 (E.D.N.Y. Feb. 27, 2014) (finding "posting of the notice of pendency

and consent forms will help ensure that putative plaintiffs are informed of the litigation");

*Sherrill v. Sutherland Glob. Servs.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) (requiring the

posting of "continuous notice of [the] action and opt-in forms in a conspicuous location").

### 5.3. Sending a Reminder Notice is Appropriate

"[R]eminder notices further serve the purpose of notifying all potential opt-in plaintiffs of

the pendency of the action." *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp., No*. 20-

CV-421 (LDH)(MMH), 2021 U.S. Dist. LEXIS 189132, at \*25-26 (E.D.N.Y. Sept. 30, 2021)

(authorizing reminder text message); *Morris v. Lettire Constr., Corp.*, 896 F. Supp. 2d 265, 275

(S.D.N.Y. 2012) and *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345 (NRB), 2013 U.S. Dist.

LEXIS 135926, 2013 WL 5308004, at \*16 (S.D.N.Y. Sept. 19, 2013) (both finding that "Given

that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the

collective action and their right to opt-in, we find that a reminder notice is appropriate.").

### 6.  THE PROPOSED NOTICE IS FAIR AND ACCURATE

Attached as Exhibit 1 to the Notice of Motion is Plaintiffs' proposed notice. The form of

the notice mirrors the notice as revised and approved by this Court in *Sarikaputar*, 2018 U.S.

Dist. LEXIS 147244, at \*16.

### 7.  IT IS PROPER TO GIVE NOTICE TO PROSPECTIVE PLAINTIFFS WHO WERE EMPLOYED AT ANY TIME DURING THE THREE YEAR PERIOD PRECEDING THE FILING OF THE COMPLAINT AND UP TO THE PRESENT TIME.

Courts within the Second Circuit routinely permit notice to be given to employees who

have worked for the defendant for the three years preceding the filing of the complaint and up to

the date of the notice.  *See, e.g., S*arikaputar, 2018 U.S. Dist. LEXIS 147244, at \*14-15 (Aaron, M.J.); *Cohan v. Columbia Sussex Mgmt., L.L.C.*, No. CV 12-3203 (JS)(AKT), 2013 U.S. Dist. LEXIS 187539, at \*26 (E.D.N.Y. Sept. 19, 2013) (Tomlinson, M.J.); *Robles v. Liberty Rest. Supply*, No. 12-CV-5021 (FB) (VMS), 2013 U.S. Dist. LEXIS 177922, at \*28 (E.D.N.Y. Dec. 18, 2013) (Scanlon, M.J.); *Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012) (Spatt, J.); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 380 (E.D.N.Y. 2010) (Hurley, J.); *Sexton v. Franklin First Fin., Ltd.*, No. No 08-CV-04950 (JFB) (ARL), 2009 U.S. Dist. LEXIS 50526, at \*33 (E.D.N.Y. June 16, 2009) (Bianco, J.); *Wilder v. Bernstein*, 982 F. Supp. 264, 264 (S.D.N.Y. 1997) (Sotomayor, J.).   "The remedial purposes of the FLSA are best served" by using the three year period prior to the filing of the complaint.  *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 325 (E.D.N.Y. 2016).

## CONCLUSION

Plaintiff respectfully requests that the Court grant this motion, thereby conditionally certifying this case as a FLSA conditional collective action under 29 U.S.C. §216(b) and authorizing dissemination of notice to all Opt-In Class members employed by the Defendants.

Dated: December 23, 2022
Huntington, New York

Respectfully Submitted,

MOSER LAW FIRM, P.C.

By: Steven J. Moser (SM 1133)

14