UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS ALVAREZ CHICAS, ALONSO VILLATORO, MISAEL ALEXANDER MARTINEZ CASTRO, ANGEL MARTINEZ, EDWIN ULLOA MOREIRA and MATEO UMAÑA individually and on behalf of all others similarly situated, | Case No. 21-cv-09014 (PAE)(SDA) |

Plaintiffs,

- *against* -

KELCO CONSTRUCTION, INC., E.L.M. GENERAL
CONSTRUCTION CORP. D/B/A KELLY'S CREW,
KELCO LANDSCAPING, INC., JOHN KELLY and
JOSEPH PROVENZANO,

Defendants.

### DECLARATION OF MATEO UMAÑA

I, Mateo Umaña, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I was employed by E.L.M. General Construction Corp. d/b/a Kelly's Crew ("ELM") from about March 2017 until about September 2019.

2. I worked as a laborer and driver. My duties included cutting grass, plant trees, flowers, picking up, cleaning up the leaves from the trees.

3. Kelco Construction, Inc. ("Kelco") and ELM have offices located at 25 Newton Place, Hauppauge, New York ("the Hauppauge facility).

4. The Hauppauge facility consists of offices, a prefabricated steel warehouse and storage facility, a yard (for storing mulch, topsoil, and other landscaping and construction materials), shipping containers for storing tools and equipment, large waste containers, and a parking lot.

5. ELM performed most of its work in New York City. When I worked, Kelco drivers and ELM employees (at least 30 in total) reported to the Hauppauge facility before 4:30 AM each morning. On rare occasions we would be expected to report at 4:00 AM or 5:00 AM.

6. Upon arriving at the Hauppauge facility, the Kelco drivers and ELM employees would load onto the company vehicles, the materials and tools needed to complete the work for the day. An employee for each vehicle would do an inventory of materials and tools to make sure everything was loaded. Then we would all travel in the company vehicles to the jobsites in New York City. At the end of the day, we would all travel from the jobsite to the Hauppauge facility. When we arrived at the Hauppauge facility at the end of the day, we would unload any unused materials and tools from the truck. We would also unload waste and garbage which we had collected during the day and dump it into the waste containers located at the Hauppauge facility. We would make sure the trucks were organized and cleaned at the end of each day. At the end of the week, on Fridays, upon arriving at the Hauppauge facility, we would clean the inside and outside of the vehicles using soap, water, brushes, hoses, and vacuums which were provided by Kelco and ELM specifically for that purpose.

7. My fellow employees and I were not paid from the time we arrived at the Hauppauge facility until the vehicles were unloaded and cleaned at the end of the day. Instead, we were paid for the time we arrived at the jobsite in the city. We were only paid from the time we were scheduled to start work at the jobsite (6AM or 7AM) until we left the jobsite to return to the Hauppauge facility. ELM only paid a drive time of 3 hours a day, usually at a rate of only $20 per hour. The drive time pay did not depend on the actual time we spent driving, loading, unloading or cleaning the vehicles.

8.      Many times they didn't pay me for my overtime or my correct hours. I would complain to Barry (a manager) because I had heard that if you ever said something to John Kelly he would fire you.  John Kelly would yell at the workers. Barry did not resolve my pay issues.

9.      Vicente, Jorge, Alberto, Juan Hernandez, Alfredo and Danny we would always talk about how they weren't paying us the right amount of hours or pay.

10.      Alberto complained to Barry about us not getting paid for the time we arrived at the Hauppauge facility and Barry simply told him that if he didn't like it, he could leave and find another job.

11.      I believe that there were other employees who also were paid by Kelly's Crew for overtime hours at rates less than 1 ½ times the regular rate of pay. The reason I believe this is because my co workers would always complain to me about not getting paid the right amount of hours.

12.      My primary language is Spanish.  On December 21, 2022, this declaration was verbally translated to me into Spanish by Shirley Navarro-Losito.

13.      I ask that the Court please authorize notice to my co-workers of the right to join this case.

I declare under penalty of perjury, that the foregoing is true and correct.

Dated:  12/21/2022

*Mateo Umana*
ID J5os3Yiu1TyP5KPuGXiNJYTS
Mateo Umaña

## eSignature Details

**Signer ID:**       **J3osSYiufTyP5KPuGXiNJY7S**
Signed by:           Mateo Umaña
Sent to email:       mateoumana7878@gmail.com
IP Address:          172.58.228.193
Signed at:           Dec 21 2022, 1:27 pm EST