UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS ALVAREZ CHICAS, ALONSO VILLATORO, MISAEL ALEXANDER MARTINEZ CASTRO, ANGEL MARTINEZ, EDWIN ULLOA MOREIRA and MATEO UMAÑA individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>KELCO CONSTRUCTION, INC., KELCO LANDSCAPING, INC., E.L.M. GENERAL CONSTRUCTION CORP. D/B/A KELLY'S CREW, JOHN KELLY and JOSEPH PROVENZANO,<br><br>Defendants. | Case No. 1:21-CV-09014 (PAE)(SDA) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND COURT-AUTHORIZED NOTICE

ELI Z. FREEDBERG
JENNIFER S. KIM
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022-3298
(212) 583-9600

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page(s)**

I.  **PRELIMINARY STATEMENT** ............................................................................... 1

II.  **THE COURT SHOULD NOT CERTIFY THE PROPOSED COLLECTIVE** ............. 2

   A.  Legal Standard ...................................................................................................... 2

   B.  Plaintiffs Are Not Similarly Situated to the Members of the Putative Collective. .............. 4

      1.  The Court Should Deny Conditional Certification of the First Sub-Collective Consisting of Hourly Employees Paid by Kelco Construction and ELM for the Same Workweek. ........ 4

      2.  The Court Should Deny Conditional Certification of the Second Sub-Collective Consisting of Kelco Construction Employees Who Drove Company Vehicles and Were Paid by ELM for the Driving Time. .......................................................................... 6

      3.  The Court Should Deny Conditional Certification of the Third Sub-Collective Consisting of Hourly ELM Employees. ................................................................... 8

   C.  Plaintiffs Do Not Demonstrate That They or the Putative Collective Were Subject to a Common Scheme or Plan of Wage and Hour Violations by Corporate Defendants. .............. 12

III.  **EVEN IF CONDITIONAL CERTIFICATION IS GRANTED, PLAINTIFFS' PROPOSED NOTICE PROGRAM REQUIRES REVISION** ................................................ 13

   A.  The Court Should Deny Plaintiffs' Request That Defendants Produce a Spreadsheet of Kelco Construction and ELM Employees, Including Their Contact Information and More.... 13

   B.  Plaintiffs' Proposed Notice Distribution Plan by Text Message and Posting is Overbroad. 14

      1.  Dissemination of the Notice by Text Message Should Not be Permitted. ..................... 15

      2.  Posting Notice Should Not be Permitted Unless Plaintiffs Specify Further Details of the Proposed Posting, Such as Location and Time Frame to Complete Posting Notice. ........... 16

   C.  The Content of Plaintiffs' Proposed Notice Must be Amended. ..................................... 19

      1.  Plaintiffs' Proposed Notice to be Sent Via Mail and Email is Not Fair and Impartial. . 20

      2.  Plaintiffs' Proposed Text Message Notice Omit Important Details to Ensure Potential Opt-in Plaintiffs Can Make an Informed Decision About Joining the Lawsuit. .................. 21

   D.  Plaintiffs' Proposed Reminder Notice Should be Rejected. ............................................ 23

   E.  The Court Should Restrict Plaintiffs' Counsel's Communications with Potential Opt-in Plaintiffs for a Limited Purpose. ............................................................................... 24

IV.  **CONCLUSION** ................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleman-Valdivia v. Top Dog Plumbing & Heating Corp*.,
  2021 U.S. Dist. LEXIS 189132 (E.D.N.Y. Sept. 30, 2021)................................................19, 22

*Benavides v. Serenity Spa NY*,
  166 F. Supp. 3d 474 (S.D.N.Y. 2016)............................................................................. *passim*

*Bittencourt v. Ferrara Bakery & Café*,
  310 F.R.D. 106 (S.D.N.Y. 2015) .............................................................................................3

*Cherif v. Sameday Delivery Corp*.,
  2015 U.S. Dist. LEXIS 133807 (E.D.N.Y. Sept. 30, 2015)....................................................18

*Chunyu Xia, et al. v. New Yung Wah Carrier LLC, et al*.,
  2023 U.S. Dist. LEXIS 3928 (E.D.N.Y. Jan. 9, 2023)  .................................................. *passim*

*Garcia v. Spectrum of Creations, Inc.*,
  102 F. Supp. 3d 541 (S.D.N.Y. 2015)......................................................................................8

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
  282 F. Supp. 2d 101 (S.D.N.Y. 2003)................................................................20, 21, 22, 23

*Gomez v. Terri Vegetarian LLC*,
  2017 U.S. Dist. LEXIS 93191 (S.D.N.Y. June 16, 2017)........................................................21

*Guillen v. Marshalls of MA*,
  841 F. Supp. 2d 797 (S.D.N.Y. 2012)......................................................................................3

*Guo v. Tommy's Sushi, Inc*.,
  2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) .......................................................................10

*Guzelgurgenli v. Prime Time Specials Inc*.,
  883 F. Supp. 2d 340 (E.D.N.Y. 2012) ..................................................................................23

*Hanming Feng v. Soy Sauce LLC*,
  2016 U.S. Dist. LEXIS 32820 (E.D.N.Y. Mar. 14, 2016) ......................................................22

*Hart v. Crab Addison, Inc.*,
  2015 U.S. Dist. LEXIS 9197 (W.D.N.Y. Jan. 27, 2015) ........................................................17

*Hoffman-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989)...............................................................................................13, 19, 24

*Hong Yan v. Renew Body Wellness, Inc.*,
   2022 U.S. Dist. LEXIS 123137 (S.D.N.Y. July 12, 2022) ....................................................11

*Hyeyoon Jung v. Gina Grp.*,
   2021 U.S. Dist. LEXIS 171200 (S.D.N.Y. Sept. 9, 2021) ........................................................3

*Levinson v. Primedia Inc.*,
   2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ...........................................................................3

*Lopes v. Heso, Inc.*,
   2017 U.S. Dist. LEXIS 178709 (E.D.N.Y. Oct. 27, 2017) .....................................................19

*Mendez v. Old Dominion Freight Line, Inc.*,
   2022 U.S. Dist. LEXIS 139711 (E.D.N.Y. Aug. 5, 2022) ........................................................4

*Morales v. Plantworks, Inc.*,
   2006 WL 278154 (S.D.N.Y. Feb. 1, 2006) .............................................................................12

*Murray v. City of New York*,
   2017 U.S. Dist. LEXIS 130594 (S.D.N.Y. Aug. 16, 2017) ......................................................4

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) .....................................................................................................2

*Panora v. Deenora Corp.*,
   2021 U.S. Dist. LEXIS 35978 (E.D.N.Y. Feb. 25, 2021) ......................................................24

*Pettenato v. Beacon Health Options*,
   425 F. Supp. 3d 264 (S.D.N.Y. 2019) ....................................................................................15

*Pierre v. City of New York*,
   2022 U.S. Dist. LEXIS 175363 (S.D.N.Y. Sept. 26, 2022) ..............................................17, 18

*Prizmic v. Armour, Inc.*,
   2006 WL 1662614 (S.D.N.Y. June 12, 2006) ..........................................................................4

*Realite v. Ark Rests. Corp.*,
   7 F. Supp. 2d 303 (S.D.N.Y. 1998) ..........................................................................................3

*Reyes v. Nidaja, LLC*,
   2015 WL 4622587 (S.D.N.Y. Aug. 3, 2015) ..........................................................................11

*Romero v. H.B. Auto. Grp.*,
   2012 WL 1514810 (S.D.N.Y. May 1, 2012) ............................................................................3

*Ruiz v. Trudda Pizzeria & Wine Room Corp.*,
   2021 WL 568249 (S.D.N.Y. Feb. 15, 2021) ..........................................................................13

iv

*Salomon v. Adderley Indus., Inc.*,
  847 Supp. 2d 561 (S.D.N.Y. 2012) ..................................................................20

*Sanchez v. JMP Ventures*,
  2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ...................................................3, 12

*Sarikaputar v. Veratip Corp.*,
  2018 U.S. Dist. LEXIS 147244 (S.D.N.Y. Aug. 29, 2018) ..............................13, 14

*Scott v. Chipotle Mexican Grill*,
  954 F.3d 502 (2d Cir. 2020) ........................................................................2, 3

*Shibetti v. Z Rest., Diner & Lounge, Inc.*,
  2021 U.S. Dist. LEXIS 83983 (E.D.N.Y. May 2, 2021) ..................................24, 25

*Shibetti v. Z Restaurant*,
  2019 WL 11623937 (E.D.N.Y. Sept. 3, 2019) .....................................................11

*Silva v. Calle 8, LLC*,
  2013 WL 6330848 (E.D.N.Y. Dec. 5, 2013) .......................................................11

*Tanski v. Avalonbay Cmtys., Inc.*,
  2017 U.S. Dist. LEXIS 112506 (E.D.N.Y. Mar. 31, 2017) ....................................23

*Wang v. H.B. Rest. Group Inc.*,
  2014 U.S. Dist. LEXIS 1440147 (S.D.N.Y. Oct. 7, 2014) ....................................16

*Yap v. Mooncake Foods, Inc.*,
  2015 WL 7308660 (S.D.N.Y. Nov. 18, 2015) ......................................................10

*Yingcai Hong v. Haiku*
  @ *WP, Inc.*, 582 F. Supp. 3d 117, 132 (S.D.N.Y. 2022) .......................................20

**Statutes**

29 U.S.C. § 216(b) ............................................................................................1, 2

Defendants Kelco Construction, Inc. ("Kelco Construction"), Kelco Landscaping, Inc. ("Kelco Landscaping"), E.L.M. General Construction Corp. d/b/a Kelly's Crew ("ELM"), John Kelly, and Joseph Provenzano (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for conditional collective certification and Court-authorized notice.  *See* Declaration of Eli Freedberg ("Freedberg Decl.") at Exs. 1-3 (Dkt. 65).

## I.    **PRELIMINARY STATEMENT**

In this action, Plaintiffs Carlos Alvarez Chicas ("Chicas"), Alonso Villatoro ("Villatoro"), Misael Alexander Martinez Castro ("Castro"), Angel Martinez ("Martinez"), Edwin Ulloa Moreira ("Ulloa"), and Mateo Umana ("Umana") (collectively, "Plaintiffs") allege, *inter alia*, that Defendants owe them and other similarly situated employees overtime wages.  Plaintiffs seek conditional certification of three (3) collectives pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") that include:

1. All hourly Kelco employees who, at any time during the three year period prior to the filing of the complaint and up to the present time, received paychecks from ELM for the same workweek;

2. All hourly Kelco employees who drove company vehicles at any time during the three year period prior to the filing of the complaint and up to the present time[1]; and

3. All hourly ELM employees (including drivers) who worked at any time during the three year period prior to the filing of the complaint and up to the present time.

Freedberg Decl. at Ex. 1, p. 2, 8-9.  Plaintiffs ask this Court to facilitate notice to these three (3) putative collectives of individuals.

By Plaintiffs' own allegations in their Second Amended Complaint ("SAC") (Dkt. 63) and by the admissions contained in the declarations submitted in support of this motion, the proposed

---

[1] As discussed below, all individuals in the second sub-collective are, by definition, members of the first sub-collective because, according to Plaintiffs' allegations these drivers were paid by ELM.

collective consist of diverse individuals who lack homogeneity within the multiple proposed sub-collectives. Moreover, as Defendants will demonstrate in this opposition, Plaintiffs approach this motion as if the Court should grant this motion pro forma, without minimally showing that they are *similarly situated* to the collective with respect to a *common, unlawful practice* under the FLSA. Plaintiffs have failed to meet even this low bar of burden by failing to present sufficient evidence from which the Court could conclude that members of the proposed sub-collectives are similarly situated to the named Plaintiffs. Plaintiffs have also utterly failed to demonstrate how or why the members of the putative sub-collectives are subject to a common unlawful policy to deny them wages to which Plaintiffs claim they were entitled to receive. Indeed, Plaintiffs have neglected to include any discussion of an actual policy, lawful or not, that applies to them and the allegedly similarly situated employees.

For these reasons and those set forth below, Plaintiffs' bid for conditional certification of the three proposed collective classes should be denied.

## II.   THE COURT SHOULD NOT CERTIFY THE PROPOSED COLLECTIVE

### A.   Legal Standard

Under the FLSA, plaintiffs may seek certification to proceed as a collective action on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b). The first procedural step towards certification—which is at issue here—requires Plaintiffs to make a "factual showing that they and potential opt-in plaintiffs" are similarly situated within the meaning of § 216(b) to warrant the dissemination of notice about and afford the putative collective members the opportunity to join this lawsuit. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). This requires Plaintiffs to demonstrate that they and the putative collective members "together were victims of a common policy or plan that violated the law." *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 515 (2d Cir. 2020). Plaintiffs must, in other words, "provide actual evidence of a factual nexus between [their]

2

situation and the persons [they] claim[] are similarly situated." *Guillen v. Marshalls of MA*, 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012) (quotation marks omitted).

While "the FLSA . . . imposes a lower bar than Rule 23" for maintenance of a collective action (*Scott*, 954 F.3d at 520), Plaintiffs' burden "is not non-existent" and collective "certification is not automatic." *Sanchez v. JMP Ventures*, 13 Civ. 7264, 2014 WL 465542, *1 (S.D.N.Y. Jan. 27, 2014) (quoting *Romero v. H.B. Auto. Grp.*, 11 Civ. 386, 2012 WL 1514810, *10 (S.D.N.Y. May 1, 2012)). Plaintiffs cannot satisfy their burden by "unsupported" or "conclusory allegations". *See Benavides v. Serenity Spa NY*, 166 F. Supp. 3d 474, 478 (S.D.N.Y. 2016). They "can rely on the pleadings, but only as supplemented by other evidence." *Bittencourt v. Ferrara Bakery & Café*, 310 F.R.D. 106, 111 (S.D.N.Y. 2015) (emphasis added).

Although the Court, at this stage, need not "evaluate the merits of a plaintiff's claim to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice, nor resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" (*Bittencourt*, 310 F.R.D. at 111-12 (quotations omitted)), Plaintiffs must provide evidence "sufficient to demonstrate that [the named] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). "More is required under the law, even at the first stage of the conditional certification process." *Sanchez*, 2014 WL 465542 at *2. Thus, Plaintiffs must "make some 'factual showing' that the allegedly illegal practice 'extends beyond their own circumstances.'" *Hyeyoon Jung v. Gina Grp.*, 19 Civ. 8624 (MKV), 2021 U.S. Dist. LEXIS 171200, *5 (S.D.N.Y. Sept. 9, 2021) (quoting *Levinson v. Primedia Inc.*, 02 Civ. 2222 (CBM), 2003 WL 22533428, *2 (S.D.N.Y. Nov. 6, 2003)).

**B.     Plaintiffs Are Not Similarly Situated to the Members of the Putative Collective.**

Conditional certification should be denied because Plaintiffs have failed to offer sufficient evidence that they are "similarly situated" to their colleagues.  To start, the putative collectives Plaintiffs seek to certify are each "too broad and conclusory in nature."  *See Mendez v. Old Dominion Freight Line, Inc*., 21 Civ. 5289 (RPK) (TAM), 2022 U.S. Dist. LEXIS 139711, * 15 (E.D.N.Y. Aug. 5, 2022) (citing *Murray v. City of New York*, 16 Civ. 8072 (PKC), 2017 U.S. Dist. LEXIS 130594, *19-20 (S.D.N.Y. Aug. 16, 2017)) (denying plaintiff's motion for conditional certification of the FLSA collective due to the alleged similarly situated employees being "overbroad and conclusory in nature").  "While employees in a proposed collective action need not be identically situated, a plaintiff must show that 'the differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been subjected.'"  *Mendez*, 2022 U.S. Dist. LEXIS 139711 at *15 (quoting *Ayers v. SGS Control Services, Inc*., 03 Civ. 9077 (RMB), 2007 Dist. LEXIS 19634, *18 (S.D.N.Y. Feb. 27, 2007)).  Failing to demonstrate such similarities among Plaintiffs and the putative collective would cause the employer to be "unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense."  *Prizmic v. Armour, Inc.*, 05 Civ. 2503, 2006 WL 1662614, *2 (S.D.N.Y. June 12, 2006) (citation and quotation marks omitted).  Plaintiffs fail to meet this minimal burden.

**1.     The Court Should Deny Conditional Certification of the First Sub-Collective Consisting of Hourly Employees Paid by Kelco Construction and ELM for the Same Workweek.**

Plaintiffs request the conditional certification of all hourly employees who were paid by both ELM and Kelco Construction for work performed during the same workweek.  Plaintiffs identify Villatoro as the "representative" for this sub-collective.  *See* Freedberg Decl. at Ex. 1, pp. 2, 8.  Such a proposed collective is too overbroad to be certified because it is not defined by an

allegedly common unlawful policy implemented by Defendants.  Indeed, simply working for two companies at the same time is not illegal, nor does it demonstrate a violation of the FLSA..

Although difficult to discern, Plaintiffs seem to imply that working for both Kelco Construction and ELM during the same week automatically leads to an underpayment of wages because Defendants would not count the time that hourly employees of Kelco Construction and ELM spent at the Hauppauge facility before being picked up and transported to job sites in New York City.  *See* Chicas Decl.[2] ¶ 5; Villatoro Decl.[3] ¶ 8; Ulloa Decl.[4] ¶ 5; Umaña Decl.[5] ¶ 5.  In other words, Plaintiffs jump to the conclusion that any time someone worked for both Kelco Construction and ELM in the same week, they were underpaid because those employees went to the Hauppauge facility, and the time spent at the facility was not counted as compensable time.

However, Plaintiffs' own pleadings and declarations, and the declarations that Defendants submit in opposition to Plaintiffs' motion, make it abundantly clear that not all putative class members went to the Hauppauge facility, nor were they required to do so.  *See* Guthrie Decl.[6] ¶ 6; E. Canales Decl.[7] ¶ 9; Ramirez Decl.[8] ¶¶ 6-7; Machado Decl.[9] ¶ 7; Escobar Decl.[10] ¶¶ 6-7; Cruz Decl.[11] ¶ 7; Piedade Decl.[12] ¶ 6; Soares Decl.[13] ¶ 6.  Their visits to the Hauppauge facility were and are infrequent to, for instance, attend social gatherings with other workers or to do work for ELM on rare Saturdays.  *See id*.  There are also employees who live far from the Hauppauge

---

[2] The Declaration of Carlos Alvarez Chicas will be hereinafter referred to as "Chicas Decl.".  (Dkt. 65-1)
[3] The Declaration of Alonso Villatoro will be hereinafter referred to as "Villatoro Decl.".  (Dkt. 65-2)
[4] The Declaration of Edwin Ulloa Moreira will be hereinafter referred to as "Ulloa Decl.".  (Dkt. 65-5)
[5] The Declaration of Mateo Umaña will be hereinafter referred to as "Umaña Decl.".  (Dkt. 65-6)
[6] The Declaration of Rohan Guthrie will be hereinafter referred to as "Guthrie Decl.".
[7] The Declaration of Elvis Canales will be hereinafter referred to as "E. Canales Decl.".
[8] The Declaration of Narciso Alvarenga Ramirez will be hereinafter referred to as "Ramirez Decl.".
[9] The Declaration of Oscar Machado will be hereinafter referred to as "Machado Decl.".
[10] The Declaration of Jose Escobar will be hereinafter referred to as "Escobar Decl.".
[11] The Declaration of Elmer Cruz will be hereinafter referred to as "Cruz Decl.".
[12] The Declaration of Helder Piedade will be hereinafter referred to as "Piedade Decl.".
[13] The Declaration of Carlos Soares will be hereinafter referred to as "Soares Decl.".

facility (*i.e.*, New Jersey) and drive directly from their residences to the jobsites each workday without having to report to the Hauppauge facility.  *See* Piedade Decl. ¶ 7; Soares Decl. ¶ 7.

Further, not all Kelco Construction employees drive company vehicles into jobsites as Plaintiffs allege.  There are employees who drive their personal vehicles alone or take public transportation to worksites, based upon their personal preferences and realities of commuting in and out of New York City.  *See* Guthrie Decl. ¶¶ 2, 7, 8; E. Canales Decl. ¶ 10; Ramirez Decl. ¶ 8; Machado Decl. ¶ 8; Escobar Decl. ¶ 7.  For instance, a Kelco Construction laborer, Rohan Guthrie, lives in Brooklyn and commuted using his own vehicle and through public transportation depending on the jobsite location.  *See* Guthrie Decl. ¶¶ 2, 7, 8.

Lastly, Plaintiffs fail to identify any common policy indicating that Defendants required their employees to work more than 40 hours per week, even by aggregating any instances in which some employees worked for both Kelco Construction and ELM.  *See* Machado Decl. ¶ 12; Piedade Decl. ¶ 14.  In any event, as Defendants' declarants attest to, during the times when employees worked overtime, they were fully paid for such hours at the overtime rate.  *See* N. Narvaez Decl.[14] ¶ 13; Cruz Decl. ¶ 16; Piedade Decl. ¶ 14. Thus, Plaintiffs fail to demonstrate that simply working for Kelco Construction and ELM during the same week subjected them to common policy or plan that violated the law and the Court should decline to certify this sub-collective.

> **2.    The Court Should Deny Conditional Certification of the Second Sub-Collective Consisting of Kelco Construction Employees Who Drove Company Vehicles and Were Paid by ELM for the Driving Time.**

This second proposed sub-collective overlaps with the first sub-collective.  It appears that every member of this sub-collective would also be a member of the first sub-collective, but only includes those individuals who (i) performed driving work and (ii) were paid by both Kelco

---

[14] The Declaration of Noel Narvaez will be hereinafter referred to as "N. Narvaez Decl.".

Construction and ELM in the same workweek.  Plaintiffs identify Plaintiffs Chicas, Villatoro, Martinez, and Ulloa as the "representatives" for this second putative sub-class.  *See* Freedberg Decl. at Ex. 1, pp. 2, 8.

This sub-collective should be denied because Plaintiffs fail to recognize that the differences among all hourly Kelco Construction employees who drove company vehicles outweigh the alleged similarities between Plaintiffs and this former putative collective.  For instance, there were at least four (4) hourly employees of Kelco Construction who drove company vehicles without picking up employees from park-and-rides and/or transport employees to jobsites during their employment.  *See* Rodriguez Decl.[15] ¶¶ 3, 5, 8; E. Canales Decl. ¶¶ 3, 5, 8.  Such employees only transported machinery, equipment, and other materials.  *See* Rodriguez Decl. ¶ 3; Hernandez Decl.[16] ¶ 3.  These employees had commercial licenses to drive commercial vehicles.  *See id.*

There are other dissimilarities among the alleged members of this putative sub-collective. Although these named Plaintiffs claimed they drove other employees in company vehicles to jobsites (*See* Chicas Decl. ¶ 2; Villatoro Decl. ¶ 3; Martinez Decl.[17] ¶ 10; Ulloa Decl. ¶ 2) some drivers typically drive into New York City jobsites alone from the Hauppauge facility.  *See* E. Narvaez Decl.[18] ¶ 6.  None of the named Plaintiffs alleged that they drove into New York City alone and employees who did are clearly dissimilar to the putative sub-collective.  Further, while Plaintiffs claim that Kelco Construction drivers and ELM employees had to load company vehicles when they arrived at the Hauppauge facility at the start of the workday (Chicas Decl. ¶ 6), other purportedly similarly situated employees stated they only prepare company vehicles for work at the end of the workday for the following day instead.  *See* E. Narvaez Decl. ¶ 12; Amador Decl. ¶

---

[15] The Declaration of Mario Rodriguez will be hereinafter referred to as "Rodriguez Decl.".
[16] The Declaration of Juan Hernandez will be hereinafter referred to as "Hernandez Decl.".
[17] The Declaration of Angel Martinez will be hereinafter referred to as "Martinez Decl.".  (Dkt. 65-3)
[18] The Declaration of Eduardo Narvaez will be hereinafter referred to as "E. Narvaez Decl.".

11.  These differences impact whether time is compensable or not, and as such, certifying this sub-collective would not cause any efficiencies for the Court.  Rather the Court would be forced to engage in multiple mini-trials for each opt-in who is subject to different policies, factual situations.  Accordingly, the Court should deny certification of this proposed sub-collective.

### 3.   The Court Should Deny Conditional Certification of the Third Sub-Collective Consisting of Hourly ELM Employees.

Plaintiffs characterize this putative collective as "all ELM hourly employees (including drivers)" during the applicable period.  *See* Freedberg Decl. at Ex. 1, p. 2.  Plaintiffs designate Plaintiffs Castro, Martinez, Umaña, and Ulloa ("ELM Named Plaintiffs") as the "representatives" of this proposed sub-collective.  *See id*. at p. 8.  The Court should deny conditional certification of this sub-collective because Plaintiffs do not present any evidence of some common scheme or policy by Defendants that violate the law, to which they and the putative collective were subjected.

Certifying a broadly defined collective of "ELM hourly employees (including drivers)" or even "ELM hourly employees similarly situated to" the ELM Named Plaintiffs would defeat the purpose of forming a collective under 216(b).  In *Benavides*, the plaintiff sought certification of an overbroad class of "all non-exempt employees" of various positions at the employer's spa business within the past six (6) years.  *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 482-83 (S.D.N.Y. 2016).  The Court viewed the plaintiff's initial submissions to support her motion for conditional certification of the collective were "conclusory" and "provided insufficient facts to corroborate her claim that all non-exempt employees [were] similarly situated to her."  *Id*.  *See also Garcia v. Spectrum of Creations, Inc.*, 102 F. Supp. 3d 541, 549-50 (S.D.N.Y. 2015) (limiting individuals in the collective to those "who performed a food preparation or delivery function for defendants" instead of the collective of "all 'non-exempt' employees" plaintiffs originally proposed).  However, the plaintiff later submitted sufficient facts to establish a "modest factual

basis . . . necessary for the Court to determine preliminarily" that the members of the putative collective were victim to a "common unlawful policy or plan." *Id.* at 483.  This came in the form of, for instance, the plaintiff "not[ing] the time and circumstances of her conversations with the five co-workers" (that she identified), "which occurred in the morning hours and on the subway home so as to be earshot of defendant." *Id.* at 482.  As such, despite the broadly defined putative collective, the *Benavides* court eventually granted conditional certification of "all non-exempt employees" in various positions.  The case at bar, however, is distinguished from the circumstances in *Benavides* for two reasons: (1) there are obvious and material differences even among the four named Plaintiffs identified to be similarly situated to the putative collective of "all hourly ELM employees"; and (2) the declarations submitted by Plaintiffs in support of their instant motion do not furnish sufficient facts for Plaintiffs to make the necessary "modest factual showing."

First, while Plaintiffs specifically state in their SAC that Plaintiff "Umaña also performed the duties of a driver" in addition to being a laborer, Plaintiffs do not, in the same way, allege in their SAC that Plaintiffs Castro, Martinez, or Ulloa were also drivers while employed by ELM. SAC ¶ 94.  In support of their instant motion for conditional certification of the FLSA collective, however, Plaintiffs Martinez and Ulloa suddenly claim that they also "transport[ed] other employees to the jobsite" and "received 'drive time' pay." *See* Martinez Decl. ¶ 10.  *See also* Ulloa Decl. ¶ 2.  Regardless, it seems that based on Plaintiff Castro's own declaration, he simply traveled to—rather than driving to—worksites in New York City by receiving a ride in company vehicles driven by other ELM employees. *See* Castro Decl. ¶ 9.  Not only is there a difference in duties among the named Plaintiffs who solely worked for ELM, but other ELM employees performed work that contrasted from one another.  For instance, Junior Blanco, an ELM employee, states that his primary duty was to water plants around throughout New York City. *See* Blanco

Decl.[19] ¶ 4.  The only reason he drives the company vehicle is to go from jobsite to jobsite with another coworker, not to transport employees, tools, and/or materials from the Hauppauge facility or park-and-ride to New York City jobsites.  *Id.* at ¶¶ 6-7, 9.  Blanco's work schedule is also starkly contrasted from that of the ELM Named Plaintiffs.  Unlike the ELM Named Plaintiffs, in the summer, Blanco works about six (6) to seven (7) days per week for approximately 12 hours per day, and in the winter, he works approximately two (2) to three (3) days per week for approximately eight (8) hours per day.  *Id.* at ¶¶ 10-11.  Blanco claims he was paid at an overtime rate for all hours he worked over 40 per week.  *Id.* at ¶ 13.  When job duties differ across a putative collective, a court shall not certify the collective.  *See Yap v. Mooncake Foods, Inc.*, 13 Civ. 6534 (ER), 2015 WL 7308660, *8 (S.D.N.Y. Nov. 18, 2015) (internal quotations omitted) (rejecting certification of collective broader than delivery workers and chefs because "complaint and affidavits [did] not contain a single factual allegation specific to other types of employees . . . such as the specific hours worked by, or the amounts paid to, other employees"); *Guo v. Tommy's Sushi, Inc.*, 14 Civ. 3964 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) (denying conditional certification of "hourly paid, non-managerial employees of the defendants" as plaintiffs did not provide "the specific hours worked by, or the amounts paid to, other employees").  Yet, Plaintiffs here are requesting the Court to certify an overbroad collective of "ELM hourly employees, whether assigned the duties of a driver or not, even though they had varying duties and schedules.

Second, Plaintiffs offer vague testimony in their respective declarations that they talked to other loosely identified individuals, about not "being paid from the moment [they] arrived at the [Hauppauge] facility" and that they "would talk and complain about the situation."  *See* Castro Decl.[20] ¶¶ 8-9; Martinez Decl. ¶¶ 8-9; Ulloa Decl. ¶¶ 8-10; Umaña Decl. ¶¶ 8-10.  "When plaintiffs

---

[19] The Declaration of Junior Blanco will be hereinafter referred to as "Blanco Decl.".
[20] The Declaration of Misael Alexander Martinez Castro will be hereinafter referred to as "Castro Decl.".

base their assertions regarding similarly situated employees upon their own observations and conversations with other employees," courts require "details about these observations and conversations, such as where and when they occurred and the names of the employees involved." *Hong Yan v. Renew Body Wellness, Inc.*, 20 Civ. 09401 (GBD) (SN), 2022 U.S. Dist. LEXIS 123137, *12 (S.D.N.Y. July 12, 2022) (quoting *Benavides*, 166 F. Supp. 3d at 481-82). Further, "Courts in this Circuit commonly authorize the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees." *Silva v. Calle 8, LLC*, 12 Civ. 677 (ERK) (MDG), 2013 WL 6330848, *3 (E.D.N.Y. Dec. 5, 2013). Such probative information may include "the names of similarly situated employees, their job titles, as well as information as to their duties and the hours they worked." *Benavides*, 166 F. Supp. 3d at 481. One of the co-workers Plaintiff Chicas claims he discussed and complained with about how they were only paid for scheduled time is Jose Flores. *See* Chicas Decl. ¶ 8. Flores claims, however, that while he knows Chicas, Villatoro, Castro, and Martinez, he has neither heard of these individuals complain about their wages nor discussed wage issues with them. *See* Flores Decl.[21] ¶ 20.

In their declarations, the ELM Named Plaintiffs state that they "all spoke and knew [they] were getting paid the same way." Ulloa Decl. ¶ 9. *See also* Castro Decl. ¶ 9; Martinez Decl. ¶ 8; Umaña Decl. ¶¶ 9, 11. Though Plaintiffs submitted six (6) declarations from named Plaintiffs in support of their instant motion (four (4) of them being relevant here), Plaintiffs make no measurable attempt at providing information through these declarations to form a "factual nexus" between themselves and the putative collective. *See Shibetti v. Z Restaurant*, 18 Civ. 856 (ERK) (ST), 2019 WL 11623937, *3 (E.D.N.Y. Sept. 3, 2019) (quoting *Reyes v. Nidaja, LLC*, 14 Civ. 9812, 2015 WL 4622587, *2 (S.D.N.Y. Aug. 3, 2015)) ("[A] plaintiff must provide some actual

---

[21] The Declaration of Jose Flores will be hereinafter referred to as "Flores Decl.".

evidence of a factual nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice.").

### C. Plaintiffs Do Not Demonstrate That They or the Putative Collective Were Subject to a Common Scheme or Plan of Wage and Hour Violations by Corporate Defendants.

Not only must Plaintiffs establish that they and the putative class are similarly situated, but they must also put forth evidence "sufficient to demonstrate that [they] and potential collective members were victims of a common scheme or plan *that violated the law*." *Morales v. Plantworks, Inc.*, 05 Civ. 2349 (DC), 2006 WL 278154, *2 (S.D.N.Y. Feb. 1, 2006) (emphasis added). In *Sanchez v. JMP Ventures, LLC*, the court denied the plaintiff's motion for conditional certification because the record proffered by the plaintiff was insufficient to support "even an inference that a common policy or plan that violated the law existed with respect to this variety of potential opt-in plaintiffs." *Sanchez*, 2014 WL 465542, *4 (S.D.N.Y. Jan. 27, 2014). Likewise, here, Plaintiffs fail to allege that Defendants had any illegal common policy or practice that affected all individuals Defendants employed whom Plaintiffs seek to encompass in their motion.

Further, Defendants acknowledge that merely because employees of a putative collective hold different positions at work, it does not automatically prevent conditional certification of a putative collective. *See Benavides*, 166 F. Supp. 3d at 483. Courts in this Circuit "routinely find employees similarly situated despite not occupying the same positions or performing the same job functions in the same locations, provided that they are subject to a common unlawful policy or practice." *Id*. (quoting *Guaman v. 5 "M" Corp.*, 13 Civ. 03820 (LGS), 2013 WL 5745905, *4 (S.D.N.Y. Oct. 23, 2013)). Defendants do not oppose this motion based upon job titles, but rather because Plaintiffs have not, however, demonstrated that they and the putative collective were subject to a common illegal policy. As provided in Section II(C) *supra*, the ELM Named Plaintiffs testified in their declarations that they knew their co-workers were being "paid the same way"

12

because they talked about it amongst themselves about not being paid the "right amount of hours." *See, e.g.*, Castro Decl. ¶ 9; Martinez Decl. ¶ 8; Ulloa Decl. ¶ 9; Umaña Decl. ¶¶ 9-11.  Plaintiffs fail to provide specificity as to the wages, hours, and policies that applied to the other employees and thus, have failed to demonstrate an inference of a common illegal policy purportedly affecting all workers.  Hence, the Court should deny Plaintiffs' motion to certify their putative collectives.

**III.     EVEN IF CONDITIONAL CERTIFICATION IS GRANTED, PLAINTIFFS' PROPOSED NOTICE PROGRAM REQUIRES REVISION**

Should the Court nevertheless conditionally certify the proposed collectives, Plaintiffs' proposed notice plan is neither fair nor impartial, and thus requires revisions.  District courts have broad discretion under the FLSA to facilitate notice to potential collection active plaintiffs.  *Ruiz v. Trudda Pizzeria & Wine Room Corp.*, No. 20-cv-8645, 2021 WL 568249, at *5 (S.D.N.Y. Feb. 15, 2021).  "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative."  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

**A.     The Court Should Deny Plaintiffs' Request That Defendants Produce a Spreadsheet of Kelco Construction and ELM Employees, Including Their Contact Information and More.**

Plaintiffs solely rely on a single court decision, *Sarikaputar v. Veratip Corp.*, 17 Civ. 00814 (ALC) (SDA), 2018 U.S. Dist. LEXIS 147244 (S.D.N.Y. Aug. 29, 2018), to support their request for Defendants to produce three Excel spreadsheets (one for each proposed collective class) containing the name, last known mailing address, email address, cell phone number, job title, dates of employment with Kelco[22], and dates of employment with ELM.  In doing so, Plaintiffs merely quote one sentence from the *Sarikaputar* decision without applying the holding in that case to the

---

[22] Unless Plaintiffs specify otherwise, as stated in Defendants' Motion to Dismiss (Dkt. 70), Defendants interpret "Kelco" to mean "Kelco Construction, Inc."  While Plaintiffs specifically abbreviate Kelco Construction, Inc. as "Kelco Construction" and Kelco Landscaping, Inc. as "Kelco Landscaping", Plaintiffs do not separately define "Kelco" in the SAC.  Unless otherwise noted, Defendants assume Plaintiffs are referring to Kelco Construction whenever Plaintiffs state "Kelco" in the SAC as the complaint contains nothing but generalized assertions regarding Kelco Landscaping, Inc.

specific facts at hand in this case.  Further, Plaintiffs fail to recognize the distinguishing fact in *Sarikaputar*, which is that the Court recognized that the defendants' restaurants were defunct. *Sarikaputar*, 2018 U.S. Dist. LEXIS 147244 at *17.  In the case at bar, both Kelco Construction and ELM, are active corporations and not defunct businesses.

Still, should the Court order Defendants to produce such spreadsheets, the Court should extend the deadline for Defendants to produce the contact information of the collective classes' members beyond the 10 business days requested by Plaintiffs.  *See* Freedberg Decl. at Ex. 1, p. 2. Plaintiffs also do not offer any reason to require Defendants to produce the contact information of potential opt-in plaintiffs.  Where Plaintiffs are unable to provide any reason for an expedited turnaround time for Defendants to produce such contact information of potential opt-in plaintiffs, allowing at least 30 days from the date of an order by the Court is more reasonable.  *See Chunyu Xia, et al. v. New Yung Wah Carrier LLC, et al*., 21 Civ. 4475 (HG) (VMS), 2023 U.S. Dist. LEXIS 3928, *31-32 (E.D.N.Y. Jan. 9, 2023) (finding it "reasonable to give Defendants 30 days from the date of this Order to produce, for the proposed collective, the eligible employees' names, and last known addresses, telephone numbers, and email addresses where Plaintiffs failed to provide a reason for the 'expedited disclosure' request within 15 days of the entry of the Court's order).

Plaintiffs seek this court to ignore these legal distinctions and issue a shorter schedule than the court found necessary to order the defunct defendant in *Sarikaputar*, which only ordered the production of the collective class members' contact information to Plaintiffs within 21 days of the date of the Court's opinion and order.  *Sarikaputar*, 2018 U.S. Dist. LEXIS 147244 at *6.

### B.   Plaintiffs' Proposed Notice Distribution Plan by Text Message and Posting is Overbroad.

Plaintiffs propose sending three separate notices to the potential collective members by first class mail, email, *and* text message, all within a span of 10 days after the production of the

spreadsheet of the collective members' contact information (as described in Section III(A) *supra*). *See* Freedberg Decl. at Ex. 1, pp. 2-3, 11, 13-14. Plaintiffs also propose that Defendants provide notice to potential opt-in plaintiffs by posting the Notice "in a prominent location at each jobsite where employees work[ed] for the entire duration of the opt-in period" within an unspecified time frame. *See id.* at p. 3. Plaintiffs' request for notice dissemination does not end here; Plaintiffs also request that they be able to distribute a reminder notice by text 30 days before the end of the 60-day opt-in period. *See id.* While Defendants believe that notices to the collective classes defined by Plaintiffs is inappropriate in their current respective forms, should the Court rule otherwise, Defendants would not object to notice distribution by mail and email. Defendants, however, object to the distribution of the Notice by text message and posting "in a prominent location at each jobsite", as well as a reminder Notice to putative collective members by text message.

### 1. Dissemination of the Notice by Text Message Should Not be Permitted.

Even where permitted, many courts first require the plaintiff to provide a legitimate justification for using text messaging as an additional medium of notice dissemination. *See, e.g.*, *Pettenato v. Beacon Health Options*, 425 F. Supp. 3d 264, 285-86 (S.D.N.Y. 2019) (denying use of text messaging, in addition to U.S. mail and e-mail, to distribute notice absent a showing of need). Plaintiffs suggest that sending the Notice by text message is appropriate here as it "is likely to increase the percentage of putative members receiving and reading the notice." *See* Freedberg Decl. at Ex. 1, p. 11. Plaintiffs base this assertion not on precedent or governmental statistics, but rather through private entity purporting to be a research center. *See id*. at p. 12. Further, Plaintiffs plainly assert that notice via text message is "even more important" in addition to regular mail and email, despite their own research center finding that email has a higher read rate. *See id.* However, Plaintiffs overlook the fact that they additionally request approval from the Court to post the Notice

15

in a "prominent location at each jobsite where employees work for the entire duration of the opt-in period." *Id*. at p. 3.  Not only does Plaintiffs' request to post notice heavily lack specificity (*see* Section III(B)(2) *infra*), but Plaintiffs do not address why distributing the Notice by mail and email, and posting the Notice would not be sufficient to inform potential opt-in plaintiffs of this lawsuit.

Plaintiffs also request permission from the Court to send a reminder Notice to potential opt-in plaintiffs via text message.  However, Plaintiffs' support for this request is even more lacking here.  In arguing that the reminder Notice is appropriate, Plaintiffs do *just* that – argue that the reminder notice is appropriate, without any reason for the reminder needing to be sent by text message.  *See* Freedberg Decl. at Ex. 1, p. 13.  However, for the reasons in Section III(D) *infra*, it is unnecessary for the Court to permit Plaintiffs to distribute reminder notices at all.

Accordingly, if the Court elects to conditionally certify the proposed collective, the Court should limit the distribution of the notice to first class mail and email.  Defendants object to Plaintiffs' request to post Notice unless Plaintiffs provide specific details as to their proposed Notice posting (*i.e.*, desired location(s) for posting, time frame to complete posting), to which Defendants agree and the Court authorizes.

### 2. Posting Notice Should Not be Permitted Unless Plaintiffs Specify Further Details of the Proposed Posting, Such as Location and Time Frame to Complete Posting Notice.

Generally, posting of a notice is permitted in "a common, non-public employee space" at the employer's worksite.  *See*, *e.g.*, *Wang v. H.B. Rest. Group Inc.*, 14 Civ. 813 (CM), 2014 U.S. Dist. LEXIS 1440147, *12-13 (S.D.N.Y. Oct. 7, 2014) (ordering posting of the notice in "a common, non-public employee space" of Defendant's restaurant when Plaintiffs requested that Defendants post notice "in a conspicuous location in Defendant's Restaurant").

Plaintiffs and the putative collective work at multiple jobsites throughout New York City. Plaintiffs allege that work for Kelco Construction alone includes at least 13 jobsites in the New

York metro area including, the United Nations and NYU Langone Hospital.  *See* Dkt. 63 ¶ 60. Requiring Defendants to post the Notice at all jobsites ignores the fact that the Defendants are, as alleged by Plaintiffs, in the landscaping and construction business, and assumes Defendants' authority to post notices at such locations.  *See* Dkt. 63 ¶¶ 22, 25, 28.  Posting at these 13 jobsites would be impractical and unduly burdensome for Defendants. Plaintiffs seek the Court to approve a blanket requirement to include "all jobsites" without limitation or specificity, including, as another example, the vaguely described "Central Park".

In permitting the posting of the Notice in the 77 police precincts in New York City, the *Pierre* Court relies upon *Hart v. Crab Addison, Inc.*, 13 Civ. 6458 (CJS), 2015 U.S. Dist. LEXIS 9197 (W.D.N.Y. Jan. 27, 2015), where the Court authorized the posting of the notice in 136 restaurants across the United States.  *See Pierre v. City of New York*, 2022 U.S. Dist. LEXIS 175363, *23-24 (S.D.N.Y. Sept. 26, 2022).  However, both *Pierre* and *Hart* are distinguishable from the circumstances in our instant case.  In *Hart*, the Court granted collective certification of 30,000 former and current employees of a large nationwide restaurant chain *throughout the U.S. See Hart*, 2015 U.S. Dist. LEXIS 9197 at *7, 9-10.  Even assuming the 136 restaurants operated throughout the 34 states equally, the notices would have been posted at four (4) restaurants each in each state.  In *Pierre*, the plaintiffs and the putative collective were past and present NYPD officers, detectives, sergeants, and lieutenants performing off-duty uniformed security work for several types of businesses in New York City.  *Pierre*, 2022 U.S. Dist. LEXIS 175363 at *3. Although members of the public can enter police precincts, or police stations, as a general matter, it is valid to say that most of the area in a police station is *not for the public* to freely walk in and out from.  On the contrary, the areas that Plaintiffs and the potential opt-ins in our case work at are parks, art centers, music halls, extraterritorial property outside of the control of the U.S.

government, and other privately-run recreational sites.  These are areas that the general public can easily walk in and out from.  Unless Plaintiffs can specify an employee-only area, away from the general public, where Defendants should conspicuously post the Notice for each alleged "jobsite", Defendants object to Plaintiffs' overbroad request to have Defendants post Notice in a "prominent job location at each jobsite" at which Plaintiffs and the putative class worked.

Further, Courts generally allow notices to be posted in non-public areas where potential collective members are likely to congregate, such as clock-in stations or break rooms."  *Id.* at *23 (quoting *Castillo v. Perfume Worldwide Inc*., 17 Civ. 2972 (JS) (AKT), 2018 U.S. Dist. LEXIS 54573, *47-48 (E.D.N.Y. Mar. 30, 2018)).  Given that Plaintiffs claim time and time again in their SAC and their instant motion that Plaintiffs and the putative collective congregated at the Hauppauge facility each morning before work and returned to the facility after work hours, Defendants would not be opposed to the posting of the Notice at the Hauppauge facility.  The Hauppauge facility is not open to the general, non-employee public, and is an area where Plaintiffs and the putative collective claim to have congregated regularly.  *Cf. Cherif v. Sameday Delivery Corp*., 13 Civ. 1341 (RJD) (MDG), 2015 U.S. Dist. LEXIS 133807, *13-14 (E.D.N.Y. Sept. 30, 2015) (ordering plaintiffs to propose, within two (2) weeks of the Court's order, locations where defendants can post the requested notice because plaintiffs did not "indicate that they have a 'home base' where drivers regularly report" and also did not identify "work locations controlled by the defendants that prospective members of a collective action may frequent").  Should the Court permit the notice posting, Defendants will consider discussing with Plaintiffs the specific "prominent location" at the Hauppauge facility Defendants can post the Notice.

Additionally, Plaintiffs are not alleged to have control over any of the "jobsites" listed in the SAC, all of which are major landmarks or generalized references to locations in New York

City.  Nothing in the SAC reveals details or indications of locations or types of work performed at each site, requiring postings be permitted anywhere in Central Park's 843 acres, inside any one of NYU Langone Hospital's locations in New York City, or on international territory at the United Nations.  *See Lopes v. Heso, Inc*., 16 Civ. 6796 (MKB) (RML), 2017 U.S. Dist. LEXIS 178709, *18-19 (E.D.N.Y. Oct. 27, 2017) (deeming it unclear whether posting notice at "third-party worksites would actually be impossible or improper").

When requesting the Court to approve the posting of the Notice, Plaintiffs are also vague as to the date on which or within how many days Defendants should complete the posting of the Notice.  As such, this request should not be authorized by the Court at this time.

### C.   The Content of Plaintiffs' Proposed Notice Must be Amended.

FLSA notices to potential opt-in plaintiffs should be accurate, timely, and neutral, so that potential opt-in plaintiffs "can make informed decisions about whether to participate."  *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170, 174 (1989).  While the text message version of the opt-in notice should be in the abbreviated form of the notice to be distributed via mail or email, the text message notice should include all important information to offer potential opt-in plaintiffs an opportunity to make an informed decision for themselves.  *See Aleman-Valdivia v. Top Dog Plumbing & Heating Corp*., 20 Civ. 421 (LDH) (MMH), 2021 U.S. Dist. LEXIS 189132, *29 (E.D.N.Y. Sept. 30, 2021)  Though the FLSA does not require specific language in the notice to potential opt-in plaintiffs, this district's standard remains that such notice should generally include some or all of the following:

> (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and

the legal effect of not joining the lawsuit; (8) the prohibition against
retaliation; and (9) the relevant contact information for any inquiries.

*Yingcai Hong v. Haiku @ WP, Inc.*, 582 F. Supp. 3d 117, 132 (S.D.N.Y. 2022) (quoting

*Salomon v. Adderley Indus., Inc.*, 847 Supp. 2d 561, 566 (S.D.N.Y. 2012).

### 1. Plaintiffs' Proposed Notice to be Sent Via Mail and Email is Not Fair and Impartial.

The opt-in notice that Plaintiffs seek to distribute should be revised in multiple areas to be

fair and impartial. First, Plaintiffs should inform potential opt-in plaintiffs in the Notice that they

themselves may be responsible for their own legal costs in the lawsuit. For instance, such language

may read along the lines of, "You may also be held liable for costs associated with this lawsuit,

and for potential counterclaims which could be asserted against you by [] the Defendants". *See*

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003).

Second, the proposed Notice discussing attorney representation of the putative collective

must not be read in a solicitation-like manner. Where Plaintiffs' proposed Notice answers the

question, "Do I have a lawyer in this case?", Plaintiffs only provide information of Plaintiffs'

current counsel, Steven Moser, Esq. Following this question and answer, the proposed Notice

provides another question, "Should I get my own lawyer?" to which the Notice states that the

potential opt-in plaintiffs first state, "You do not need to hire your own lawyer because Plaintiffs'

Counsel will be working on your behalf", and thereafter provide that potential opt-in plaintiffs

"have a right to hire an attorney of your own choice to represent you in this matter." Freedberg

Decl. at Ex. 3, p. 4 (Dkt. 64-1). Plaintiffs should also revise their proposed Notice to include that,

should potential opt-in plaintiffs obtain an attorney of their own choice, such attorney "must file

an 'opt-in' consent form [insert date that is 60 days from the date of notice mailing]" so that such

opt-in plaintiffs may timely opt into the lawsuit. *Gjurovich*, 282 F. Supp. 2d at 107.

Third, Plaintiffs should be ordered to insert in an appropriate place in Plaintiffs' proposed Notice, Defendants' counsel's information (*i.e.*, name, mailing address, phone number).  *See*, *e.g.*, *Xia*, 2023 U.S. Dist. LEXIS 3829 at *36 (permitting inclusion of Defendants' counsel's contact information in the notice); *Gjurovich*, 282 F. Supp. 2d at 108.

Lastly, potential opt-in plaintiffs should not be instructed to return the opt-in form to Plaintiffs' counsel.  *See* Freedberg Decl. at Ex. 2, pp. 3, 5 (Dkt. 64).  Rather, the opt-in forms should be mailed to the Court.  *See*, *e.g.*, *Xia*, 2023 U.S. Dist. LEXIS 3829 at *35-36 (requiring potential opt-in plaintiffs to, once completed, send the notice and consent form "to the Court and not to Plaintiffs' counsel to avoid potential disputes on the timeliness of the opt-in form filing and establish that opt-in plaintiffs may seek their own counsel and need not retain Plaintiffs' counsel"); *Gomez v. Terri Vegetarian LLC*, 17 Civ. 213 (JMF), 2017 U.S. Dist. LEXIS 93191, *7 (S.D.N.Y. June 16, 2017) (same).

### 2. Plaintiffs' Proposed Text Message Notice Omit Important Details to Ensure Potential Opt-in Plaintiffs Can Make an Informed Decision About Joining the Lawsuit.

Plaintiffs' proposed text message Notice states, in pertinent part:

"[Y]ou may be entitled to join a lawsuit claiming unpaid overtime compensation.  For additional information about the case, including how to join, please (i) respond to this text message, (ii) email legalsupport2@moserlawfirm.com, or (iii) visit www.moserlawfirm.com/kelconotice.com.[23]"

Freedberg Decl. at Ex. 2, p. 2.  Defendants object to this proposed text message Notice for several reasons.  First, Plaintiffs' proposed text message Notice does not expressly state that

---

[23] At the time of Plaintiffs' instant motion and the filing date of Defendants' opposition, this website did not exist.  Even if Defendants want to object to anything on this website, Defendants are currently unable to do so because this URL does not lead to an existing web page.  To the extent that this website goes live at a later date, Defendants reserve the right to object to any of the contents on this web page should Defendants find any portion of the web page objectionable.

putative collective members have the option to not join the lawsuit.[24]   The Notice instead provides ways to contact Plaintiffs' counsel if putative plaintiffs wish to obtain additional information about the lawsuit, "including how to join", without more.   *Aleman-Valdivia*, 2021 U.S. Dist. LEXIS 189132, *26 ("[T]he instructions in the Reminder Notice impermissibly suggest that opt-in plaintiffs are required to act even if they do not want to join the lawsuit").   As such, Plaintiffs should be instructed to note, even briefly, in the text message Notice that potential opt-in plaintiffs are not obligated to join the lawsuit.

Second, the proposed text message Notice fails to "include a statement of the Court's neutrality in this case."[25]   *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp*., 2021 U.S. Dist. LEXIS 189132 at *27.   *See also Gjurovich*, 282 F. Supp. 2d at 111 ("The Court has taken no position in this case regarding the merits of the Plaintiff's claims or of the Defendants' defenses.").   Plaintiffs should be required to add this language to the text message Notice.

Third, the proposed text message Notice does not inform potential opt-in plaintiffs of their discovery and preservation obligations.   Failing to do so *does not* "insure that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class actions."   *Id*. at *26 (quoting *Hanming Feng v. Soy Sauce LLC*, 15 Civ. 3058 (ENV) (LB), 2016 U.S. Dist. LEXIS 32820, *19 (E.D.N.Y. Mar. 14, 2016)).   This is an important obligation of potential opt-in plaintiffs during discovery and should be noted in the text message Notice.

Lastly, the text message omits Defendants' position in this lawsuit.   *Aleman-Valdivia*, 2021 U.S. Dist. LEXIS 189132 at *29 ("[T]he Text Message Notice . . . should also include a statement

---

[24] Plaintiffs' proposed Reminder Notice via text clearly states, "You are not required to join this lawsuit."   Freedberg Decl. at Ex. 2, p. 3.  Plaintiffs' proposed Notice to be sent via first class mail and email also states, "You are under no obligation to respond to this notice."  Freedberg Decl. at Ex. 3, p. 1.

[25] Meanwhile, Plaintiffs' proposed Notice to be disseminated via first class mail and email states, "No determination has been made that you are owed any amount [of] money, and the Court is not endorsing the merits of this lawsuit or advising you to participate in this lawsuit."  Freedberg Decl. at Ex. 3, p. 1.

regarding Defendants' denial of any wrongdoing.").  Thus, Plaintiffs should be instructed to add to their proposed text message Notice language similar to the following: "The Defendants deny the Plaintiff[s'] allegations, and deny that they are liable to the Plaintiff[s] for any of the back pay, damages, costs or attorney[s'] fees sought."  *Gjurovich*, 282 F. Supp. 2d at 106.

### D.   Plaintiffs' Proposed Reminder Notice Should be Rejected.

In addition to Defendants' objections to Plaintiffs' proposed text message Notice as provided in Section III(C)(2) *supra*, Defendants oppose Plaintiffs' request to send potential opt-in plaintiffs a reminder notice 30 days before the close of the opt-in period.  Plaintiffs, in their instant motion, cherry pick a collection of decisions to simply quote the purpose of reminder notices and where the court authorized dissemination of reminder text message notices to potential opt-in plaintiffs.  *See* Freedberg Decl. at Ex. 1, p. 13.  While Defendants do not disagree with the general purpose of authorizing reminder notices in some instances, Plaintiffs have not identified a reason(s) as to why they need to distribute reminder notices (and specifically doing so by text message).  *See Xia*, 2023 U.S. Dist. LEXIS 3829 at *32-34 (internal quotations omitted) (quoting *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) ("[A] plaintiff seeking a reminder notice must also identify any reason why a reminder notice is necessary for their particular case.").  Failing to offer reasons for reminder text messages deprives the Court of the opportunity to evaluate the need in this case, and the Court should not allow Plaintiffs to succeed by merely quoting some supporting language in a handful of decisions.  *See id*. (quoting *Tanski v. Avalonbay Cmtys., Inc.*, 15 Civ. 6260 (AKT), 2017 U.S. Dist. LEXIS 112506, *61 (E.D.N.Y. Mar. 31, 2017)) (rejecting Plaintiffs' request to send a reminder notice because Plaintiffs failed "to discuss the particular circumstances of the instant case which would [] necessitate such notice.").

### E.     The Court Should Restrict Plaintiffs' Counsel's Communications with Potential Opt-in Plaintiffs for a Limited Purpose.

"There is often an unspoken but well understood conflict in FLSA actions: plaintiffs (or rather their counsel) want a large collective to increase potential damages and attorneys' fees. . . ." *Shibetti v. Z Rest., Diner & Lounge, Inc*., 18 Civ. 856 (BMC), 2021 U.S. Dist. LEXIS 83983, *20 (E.D.N.Y. May 2, 2021) (quoting *Panora v. Deenora Corp*., 19 Civ. 7267, 2021 U.S. Dist. LEXIS 35978, *179 (E.D.N.Y. Feb. 25, 2021)).  It is well-established that district courts have a "substantial interest in communications that are mailed for single actions involving multiple parties." *Hoffmann-LaRoche Inc.*, 493 U.S. at 170.  "Because of the potential for abuse, a district court has both the duty and the broad authority to enter appropriate orders governing the conduct of counsel and the parties." *Id.* at 171 (citations and quotation marks omitted).  One of the ways to avoid any opportunity for such abuse of power is to limit the communications between the attorneys and potential opt-in plaintiffs.  *Hamelin*, 2009 U.S. Dist. LEXIS 142878 at *16-18 (restricting communications between counsel for either party and potential opt-in plaintiffs for "the limited purpose of ensuring the notice is received").

In both Plaintiffs' proposed text message and Reminder Notice, Plaintiffs' counsel's phone number, email address, and a URL to a web page (purportedly about the instant lawsuit) are included.  With this information, potential opt-in plaintiffs can contact Plaintiffs' current counsel and obtain a better understanding of the lawsuit, their rights, and should they opt in, their duties as members of the collective.  At the same time, however, there is the possibility of solicitation or coercion by Plaintiffs' counsel over potential opt-in plaintiffs without oversight or accountability by anyone, especially during phone conversations.  Therefore, the Court should place strict parameters on these potential communications between Plaintiffs' counsel and the putative collective.  *Hamelin*, 2009 U.S. Dist. LEXIS 142878 at *14 (acknowledging "that plaintiffs' direct

contact with potential opt-in plaintiffs raises ethical concerns"); *Shibetti*, 2021 U.S. Dist. LEXIS 83983, *13-14 (citations and quotation marks omitted) (providing that an example of solicitation is when a "an attorney called specific individuals, asking them 'to give him a call back' if they had 'any interest in joining this lawsuit'").  For example, the Court may include in its order a statement that Plaintiffs' counsel may not contact potential opt-in plaintiffs to persuade them to opt in, and that communications between potential opt-in plaintiffs and Plaintiffs' counsel must be limited to restrictive topics.

## IV.   CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety.

Respectfully submitted,

Date:   January 27, 2023
        New York, New York


*/s/ Eli Z. Freedberg*
Eli Z. Freedberg
Jennifer S. Kim
LITTLER MENDELSON P.C.
900 Third Avenue
New York, NY 10022-3298
(212) 583-9600

*Attorneys for Defendants*