UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARLOS ALVAREZ CHICAS, ALONSO VILLATORO, MISAEL ALEXANDER MARTINEZ CASTRO, ANGEL MARTINEZ, EDWIN ULLOA MOREIRA and MATEO UMAÑA individually and on behalf of all others similarly situated,

**Case No. 21-cv-09014 (PAE)(SDA)**

Plaintiffs,

- *against* -

KELCO CONSTRUCTION, INC., KELCO LANDSCAPING, INC., E.L.M. GENERAL CONSTRUCTION CORP. D/B/A KELLY'S CREW, JOHN KELLY and JOSEPH PROVENZANO,

Defendants.

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216**

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
5 E. Main Street
Huntington, NY 11743
631.824.0200
steven.moser@moserlawfirm.com
*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**LEGAL ARGUMENT**............................................................................................................... 2

    1.    THE DECLARATIONS SUBMITTED BY DEFENDANTS DO NOT FORM A BASIS FOR DENYING THE MOTION FOR CONDITIONAL CERTIFICATION .................... 2

        1.1.    Defendants may not defeat a motion for conditional certification by submitting competing declarations. ............................................................................................. 2

        1.2.    The Defendants' declarations are defective because the interpreters are neither court certified, nor have they established their qualifications to translate. ......................... 2

        1.3.    The Declarants were victims of the very FLSA violations identified in the motion for conditional certification................................................................................... 4

        1.4.    The Defendants have not sufficiently challenged the assertion that Kelco drivers and ELM employees are similarly situated in their "travel time" claims. .......................... 5

        1.5.    The declarations submitted by the Defendants do not explicitly state that employees were paid for all overtime hours worked at 1 ½ times their regular rate of pay. ......... 6

    2.    DEFENDANTS HAVE NOT DEMONSTRATED ANY REASON WHY THE PRODUCTION OF THE COLLECTIVE LIST SHOULD REQUIRE 30 DAYS, AND A TEN-DAY PRODUCTION PERIOD IS REASONABLE................................................ 7

    3.    NOTICE BY TEXT MESSAGE IS APPROPRIATE ........................................................ 7

    4.    POSTING OF NOTICE AT JOBSITES IS APPROPRIATE ............................................ 8

    5.    DEFENDANTS' REQUEST FOR INJUNCTIVE RELIEF REGARDING COMMUNICATIONS WITH PUTATIVE COLLECTIVE ACTION MEMBERS IS VAGUE AND UNFOUNDED ............................................................................................ 10

**CONCLUSION** ........................................................................................................................ 11

## PRELIMINARY STATEMENT

Plaintiffs' motion for court-authorized notice of this collective action identified two policies that may violate the overtime provisions of the FLSA:

1. **Failure to aggregate hours.** Kelco Construction, Inc. ("Kelco") and E.L.M. General Construction Corp. ("ELM") are related entities that each issued payroll checks to the same employees covering the same workweek. However, the hours paid by Kelco and ELM were not aggregated for the purpose of calculating overtime under the FLSA and the NYLL, and overtime hours were not paid at 1 ½ times the employee's regular rate of pay, resulting in the failure to properly pay overtime.

2. **Travel time.** ELM hourly employees and Kelco drivers were required to report each morning to the Defendants' facility located at 25 Newton Place, Hauppauge, New York (the "facility"). Upon arriving the employees would load company trucks with materials and tools. They would then travel to worksites in the New York Metropolitan area. At the end of the workday, Kelco drivers would transport employees back to the park and ride and then return to the facility. ELM employees returned directly to the Hauppauge facility where they would unload and clean the trucks. Plaintiffs were not paid from the time they reported for work or began working until the end of the workday.

Based upon the foregoing, the Plaintiffs requested notice to the following three groups of workers:

1. All hourly Kelco employees who, at any time during the three-year period prior to the filing of the complaint and up to the present time, received paychecks from ELM for the same workweek;[1]

2. All hourly Kelco employees who drove company vehicles at any time during the three-year period prior to the filing of the complaint and up to the present time; and

3. All hourly ELM employees who worked at any time during the three-year period prior to the filing of the complaint and up to the present time.[2]

In opposition to the instant motion, Defendants submit the declarations of 18 current employees ("Declarants") in an attempt to contradict the statements made by Plaintiffs and

---

[1] For this group, the hours worked for both Kelco and ELM were not aggregated, and defendants compensated employees for overtime at rates far below 1 ½ times the regular rate of pay.
[2] The second and third groups were not paid for compensable travel time.

establish that the above three groups are not similarly situated to the Plaintiffs.

## LEGAL ARGUMENT

1. **THE DECLARATIONS SUBMITTED BY DEFENDANTS DO NOT FORM A BASIS FOR DENYING THE MOTION FOR CONDITIONAL CERTIFICATION**

    **1.1. Defendants may not defeat a motion for conditional certification by submitting competing declarations.**

    Courts "routinely disregard" declarations submitted by defendants at the conditional-certification stage. *Ke v. JR Sushi 2 Inc.*, No. 19 Civ. 7332 (PAE) (BCM), 2021 U.S. Dist. LEXIS 24554, at *5 (S.D.N.Y. Feb. 9, 2021) (Engelmayer, J.). "[C]ompeting declarations therefore cannot defeat the conditional certification motion." *Dong Yuan v. & Hair Lounge Inc.*, No. 18-CV-11905 (AT) (BCM), 2019 U.S. Dist. LEXIS 230330, at *17 (S.D.N.Y. Nov. 7, 2019).[3]

    **1.2. The Defendants' declarations are defective because the interpreters are neither court certified, nor have they established their qualifications to translate.**

    "It is well settled that when a declarant does not speak and read English. . .the party relying on his declaration is required to submit documents sufficient to establish that the

---

[3] The overwhelming consensus in this District is that "[d]efendants . . . may not defeat a court's determination that [p]laintiffs are similarly situated by submitting their own affidavits" at the conditional certification stage. *Colon v. Major Perry Street Corp.*, 12 Civ. 3788 (JPO), 2013 U.S. Dist. LEXIS 93021, 2013 WL 3328223 at *5 (S.D.N.Y. July 2, 2013) (Oetken, D.J.); *accord Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 407 n.6 (S.D.N.Y. 2012) (Koeltl, D.J.) ("[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiff's showing in the first stage of the conditional certification process."), *class decertified,* 93 F. Supp. 3d 279 (S.D.N.Y. 2015); *Pippins v. KPMG LLP,* 11 Civ. 0377 (CM)(JLC), 2012 U.S. Dist. LEXIS 949, 2012 WL 19379 at *12 (S.D.N.Y. Jan. 3, 2012) (McMahon, D.J.) ("To balance the parties' competing affidavits at this stage would require the Court to determine the facts, determine credibility of the affiants, and resolve legal contentions, all of which the conditional certification . . . process is structured so as to avoid."); *Francis v. A & E Stores, Inc.,* 06 Civ. 1638 (CS)(GAY), 2008 U.S. Dist. LEXIS 83369, 2008 WL 4619858 at *3 (S.D.N.Y. Oct. 16, 2008) (Seibel, D.J.) (adopting Report & Recommendation as modified) (declining to consider defendants' competing affidavits to show manager duties were not similarly situated); *Damassia v. Duane Reade*, Inc., 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971 at *4 (S.D.N.Y. Oct. 5, 2006) (Lynch, then D.J., now Cir. J.) (declining to consider 56 affidavits submitted by defendants where plaintiffs had not yet had an opportunity to depose affiants).

*Amhaz v. Booking.com (USA), Inc.*, 2018 U.S. Dist. LEXIS 144675, at *16-17 (S.D.N.Y. Aug. 23, 2018)

declarant knew what he was signing." *Barrera v. Forlini's Rest., Inc.*, No. 22-CV-1256 (VEC), 2022 U.S. Dist. LEXIS 144595, at *4 n.2 (S.D.N.Y. Aug. 12, 2022). One way of establishing this is by submitting an English declaration signed by a foreign-language speaker accompanied by a declaration of translation. *See Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007).

Federal courts recognize at least two broad categories of interpreters: (1) "court-certified" interpreters who have passed the Administrative Office certification examination, and (2) "language skilled/*ad hoc*" interpreters who can demonstrate the ability to interpret from English to a foreign language and from a foreign language into English.[4] Unless an interpreter is court-certified, the declaration of translation must indicate the translator's "facility" in the foreign language and English. *Barrera v. Forlini's Rest., Inc.*, No. 22-CV-1256 (VEC), 2022 U.S. Dist. LEXIS 144595, at *4 n.2 (S.D.N.Y. Aug. 12, 2022).

Here, the translators Luis Lopez and Francisco Ferenczi state that they are "certified court interpreter[s]" and that they translated the declarations in their "capacity as…court interpreter[s]."[5] Under the Court Interpreters Act, 28 U.S.C. § 1827(b)(3), the Director of the Administrative Office of the United States Courts maintains and publishes "a current master list of all certified interpreters." According to the lists, Luis Lopez and Francisco Ferenczi were <u>not</u> federally court-certified interpreters as they claim.[6] Moreover, Messrs. Lopez and Ferenczi do not indicate their level of proficiency in English and Spanish/Portuguese. English declarations of a foreign language declarant unaccompanied by a certified translation "are inadmissible and will not be considered by the Court." *Heredia v. Americare, Inc.,* No. 17 Civ. 06219 (RWL), 2020

---

[4] *See* https://www.uscourts.gov/services-forms/federal-court-interpreters/interpreter-categories#a1 (last visited 2/12/2023)
[5] Lopez Declaration ¶¶ 1, 2; Ferenczi Declaration ¶¶ 1, 2.
[6] Administrative Office of the United States Courts: *Public Release Roster of Federally Certified Court Interpreters* (January 15, 2023 and February 9, 2023)(annexed to the Declaration of Steven J. Moser as Exhibits 1 & 2).

U.S. Dist. LEXIS 122880, at *12 (S.D.N.Y. July 13, 2020). Therefore, the declarations are inadmissible.

### 1.3. The Declarants were victims of the very FLSA violations identified in the motion for conditional certification.

The Defendants' payroll records indicate that the Declarants were victims of a policy that violated the FLSA. Because Kelco and ELM were related employers, they were required to aggregate hours worked and pay for all overtime hours at 1 ½ times the regular rate of pay. (*see* Plaintiffs' MOL In Support of Motion for Conditional Certification, at 9-10). The Declarants were paid by both Kelco and ELM for work ostensibly performed during the same workweek. Their hours were not aggregated for the purpose of computing overtime, and they were not paid for overtime at 1 ½ times their regular rate of pay.

Examples of workweeks in which each Declarant was deprived of overtime compensation are provided in Table 1 (page 5). The first line of Table 1 shows that, according to Eduardo Narvaez's paystubs for the workweek ending February 19, 2022, he worked a combined total of more than 40 hours for the Defendants.[7] His Kelco regular rate was $52.56 and his overtime rate was **$ 78.840 per hour.** However, Defendants paid him for 15 hours of overtime at only **$25.00 per hour.** The second line of Table 1 shows that, according to Elmer Amador's paystubs for the workweek ending February 19, 2022, he worked a combined total of more than 40 hours for the Defendants.[8] His Kelco regular rate was $45.85 and his overtime rate was **$68.775 per hour.** However, the Defendants paid him for 15 hours of overtime at only **$25 per hour.**

---

[7] Paystubs for Eduardo Narvaez from Kelco and ELM are annexed to the Moser Declaration as Exhibits 3 & 4.
[8] Paystubs for Elmer Amador from Kelco and ELM are annexed to the Moser Declaration as Exhibits 5 & 6.

| Declarant Name | Kelco Paystub Ex. | ELM Paystub Ex. | Week Ending | Regular Rate (Kelco) | OT Rate (Kelco) | Add'l OT Hours | OT Rate Paid |
|---|---|---|---|---|---|---|---|
| Eduardo Narvaez | 3 | 4 | 2/19/2022 | $ 52.56 | **$ 78.840** | 15 | **$25.00** |
| Elmer Amador | 5 | 6 | 2/19/2022 | $ 45.85 | **$ 68.775** | 15 | **$25.00** |
| Elvis Canales | 7 | 8 | 4/10/2021 | $ 43.00 | **$ 64.500** | 8 | **$37.50** |
| Juan Hernandez | 9 | 10 | 1/29/2022 | $ 46.12 | **$ 69.180** | 12 | **$30.00** |
| Mario Rodriguez | 11 | 12 | 1/29/2022 | $ 46.12 | **$ 69.180** | 18 | **$30.00** |
| Rohan Guthrie | 13 | 14 | 6/20/2020 | $ 42.65 | **$ 63.975** | 8 | **$15.00** |
| Elmer Cruz | 15 | 16 | 8/22/2021 | $ 43.00 | **$ 64.500** | 8 | **$33.00** |
| Jose Canales | 17 | 18 | 5/15/2021 | $ 43.48 | **$ 65.220** | 8 | **$42.00** |
| Jose Flores | 19 | 20 | 10/2/2021 | $ 51.63 | **$ 77.445** | 15 | **$20.00** |
| Narciso Alvarenga Ramirez | 21 | 22 | 11/20/2021 | $ 43.98 | **$ 65.970** | 3 | **$20.00** |
| Noel Narvaez | 23 | 24 | 2/19/2022 | $ 48.45 | **$ 72.675** | 15 | **$20.00** |

*Table 1.* According to the Declarants' paystubs, they were not paid for overtime hours at 1 ½ times their regular rate of pay.[9]

### 1.4. The Defendants have not sufficiently challenged the assertion that Kelco drivers and ELM employees are similarly situated in their "travel time" claims.

Defendants submit the declarations of at least seven individuals who say that they were not required to report to the facility each morning: Elvis Canales[10], Rohan Guthrie[11], Elmer Cruz[12], Helder Piedade[13], Jose Escobar[14], Oscar Machado[15], and Carlos Soares[16]. The declarants' claim that they were not required to report to the Hauppauge facility each morning is unsurprising because the "travel time" collective consists of (1) Kelco drivers and (2) ELM employees, who reported to the Hauppauge facility each morning. Canales, Guthrie, Elmer Cruz, Piedade, Escobar, Machado, and Soares are *Kelco employees but were not drivers.* Therefore, they do not fall within the definition of the "travel time" collective.

---

[9] The inclusion of this table within the body of this Memorandum causes it to be 11 pages. Plaintiffs respectfully request that the table not be included towards the page limits.
[10] Elvis Canales Decl. ¶ 9.
[11] Rohan Guthrie Decl. ¶ 6.
[12] Elmer Cruz Decl. ¶¶ 7-8.
[13] Hector Piedade Decl. ¶ 6.
[14] Jose Escobar Decl. ¶ 6.
[15] Oscar Machado Decl. ¶ 6.
[16] Carlos Soares Decl. ¶ 6.

It is important to note the following, however:

- None of the 18 Declarants deny that there is a group of individuals who, like the Plaintiffs, were required to report to the facility each morning before traveling to the worksite.

- None of the Declarants say that employees like the Plaintiffs who were required to report to the facility were paid for travel time at 1 ½ times their regular rate of pay.

**1.5. The declarations submitted by the Defendants do not explicitly state that employees were paid for all overtime hours worked at 1 ½ times their regular rate of pay.**

None of the Declarants has explicitly stated that he was paid for all overtime hours at 1 ½ times his regular rate of pay. 7 of the 18 Declarations, which were prepared by Defendants' counsel, do not even mention the word "overtime."[17] The remaining declarations, also drafted by Defendants' counsel, fall short of saying that Defendants paid them for all overtime hours at 1 ½ times the regular rate of pay. Instead, they state that the Declarants were paid for "all hours" at "an overtime rate." *See* Elmer Cruz Declaration (ECF No. 85, ¶ 16)("When I work over forty (40) hours in a week, I am paid for those hours at *an overtime rate*."); Gerson Juarez Declaration (ECF No. 86, ¶ 11)("Whenever I worked over forty ( 40) hours per week, ELM paid me *an overtime hourly rate*."); Helder Piedade (ECF No. 87, ¶ 14)( Kelco Construction paid me for all hours I worked over forty ( 40) in a week); Jose Canales (ECF No. 88, ¶ 14)("When I work over forty ( 40) hours in a week, I am paid for those hours at *an overtime rate*."); Jose Escobar (ECF No. 89, ¶ 17)(I am paid for overtime hours from Kelco Construction and ELM); Jose Flores (ECF No. 90, 19)("I generally am paid $25.00 per hour from ELM for *additional Saturday work* [sic.] and am paid at an overtime hourly rate of $37.00 for hours worked over forty ( 40)."); Junior Blanco (ECF No. 91, 3)("Whenever I worked over forty (40) hours per week, ELM paid me *an overtime hourly rate*."); Milton Ruiz (ECF No. 92, 16)("Whenever I worked over forty

---

[17] Declarations of Eduardo Narvaez, Elmer Amador, Elvis Canales, Juan Hernandez, Mario Rodriguez, Rohan Guthrie and Carlos Soares.

(40) hours per week, ELM paid me *an overtime hourly rate.*"); Narciso Alvarenga Ramirez (ECF No. 93, 17)("I am paid for overtime hours from Kelco Construction and ELM."); Noel Narvaez (ECF No. 94, 13)("Depending on the job, I work overtime hours on Saturday and am paid *an overtime rate.*")(emphasis supplied).

**2. DEFENDANTS HAVE NOT DEMONSTRATED ANY REASON WHY THE PRODUCTION OF THE COLLECTIVE LIST SHOULD REQUIRE 30 DAYS, AND A TEN-DAY PRODUCTION PERIOD IS REASONABLE.**

There is sufficient precedent for a ten-day production period. *See Alvarez v. Schnipper Rests. L.L.C.*, No. 16 Civ. 5779 (ER), 2017 U.S. Dist. LEXIS 204596, at *18 (S.D.N.Y. Dec. 11, 2017); *Emeterio v. A & P Rest. Corp.*, No. 20-CV-970 (JMF), 2021 U.S. Dist. LEXIS 5750, at *5 (S.D.N.Y. Jan. 12, 2021); *Laroque v. Domino's Pizza, L.L.C.*, 557 F. Supp. 2d 346, 357 (E.D.N.Y. 2008). Courts also have given a defendant up to 14 days to produce the collective-class list. *See Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH)(MMH), 2021 U.S. Dist. LEXIS 189132, at *35 (E.D.N.Y. Sept. 30, 2021); *Campos v. Lenmar Rest. Inc.*, No. 18 Civ. 12359 (KPF), 2019 U.S. Dist. LEXIS 202598, at *16 (S.D.N.Y. Nov. 21, 2019); *Valerio v. RNC Indus., L.L.C.*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014); *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 327 (E.D.N.Y. 2016).

**3. NOTICE BY TEXT MESSAGE IS APPROPRIATE**

As pointed out in the Plaintiffs' memorandum of law, *neither the FLSA nor the NYLL requires an employer to record the employee's email*. Defendants agree to "notice distribution by mail and email"[18], but have not indicated whether they have current mailing or email addresses for the putative collective action members.

---

[18] Defendants' Memorandum of Law, at 15.

Defendants do not dispute the statistics showing that recipients are much more likely to open and read a text message than to open and read an email. Nor do the Defendants deny that text message is an efficient method of communication. The decisions that deny notice by text message are unpersuasive. As explained by one court,

> The trend among district courts. . .has been to approve notice by text message only where plaintiffs can show that notice by U.S. mail and email was returned undeliverable. However, I find that approach unnecessarily complicated and less effective than allowing notice by text message in the first instance. The remedial purpose of the FLSA guides my decision. Considering the changes in technology and the way we communicate, allowing plaintiffs to send notice via text message will increase the likelihood of potential class members receiving notice. This is the aim of the FLSA.

*Pryke v. First Solar, Inc.*, No. 3:21-CV-00681-JGC, 2021 U.S. Dist. LEXIS 208794, at *8 n.1 (N.D. Ohio Oct. 29, 2021) (citations omitted).

**4. POSTING OF NOTICE AT JOBSITES IS APPROPRIATE**

"Defendants object to Plaintiffs' *overbroad request* to have Defendants post Notice in a 'prominent job location at each job site at which Plaintiffs and the putative class worked."[19] The Defendants suggest that they are unable to post notice at locations where work is being performed because they do not "have control over any of the 'job sites'" where Plaintiffs work.[20] However, at least two Articles of the New York Labor Law not only permit, but already require the Defendants to post notices at job sites.

Kelco admits in its answer that it is "a landscape installation and construction company that performs work in the New York metropolitan area."[21] Therefore, it is subject to the Construction Industry Fair Play Act, which states:

---

[19] See Def MOL, 23-24 (emphasis supplied)("Additionally, Plaintiffs (sic.) are not alleged to have control over any of the 'jobsites' listed in the SAC, all of which are major landmarks or generalized references to locations in New York City.")
[20] *Id.*
[21] The Complaint (ECF 1), and Defendants' Answer (ECF No. 23), are annexed to the Moser Declaration as Exhibits 25 & 26.

8

> Every contractor[22] shall post in a prominent and accessible place on the site where the construction is performed a legible statement, provided by the commissioner, that describes the responsibility of independent contractors to pay taxes required by state and federal law, the rights of employees to workers' compensation, unemployment benefits, minimum wage, overtime and other federal and state workplace protections, and the protections against retaliation and the penalties in this article if the contractor fails to properly classify an individual as an employee.

NYLL § 861-D.

Similarly, Kelco admits that "it was involved in public work projects during the relevant period." ¶ 57. However, Kelco suggests it should not be required to post notice at public work projects because the Plaintiffs have not demonstrated that Kelco would be "be permitted" to post notice "anywhere in Central Park's 843 acres. . . or on international territory at the United Nations." Def MOL at 19. However, Kelco is not only permitted but is already required, to post notice at job sites where public work is being performed:

> The contractor and every sub-contractor on public works contracts shall post in a prominent and accessible place on the site where the work is performed a legible statement of all wage rates and supplements as specified in the contract to be paid or provided, as the case may be, for the various classes of mechanics, workers, or laborers employed on the work. Such posted statement shall be written in plain English and titled, in lettering no smaller than two inches in height and two inches in width, with the phrase "Prevailing Rate of Wages". Such posted statement shall be constructed of materials capable of withstanding adverse weather conditions.

NYLL § 220 3a(a)(ii).

Therefore, the Plaintiffs request that the Defendants be required to post notice in a prominent and accessible place on the job site where work is performed a copy of the notice, in English and Spanish for the duration of the opt-in period and that such posted notice be constructed of materials capable of withstanding adverse weather conditions.

---

[22] According to the Construction Industry Fair Play Act "Construction" broadly includes "constructing, reconstructing, altering, maintaining, moving, rehabilitating, repairing, renovating or demolition of any building, structure, or improvement, or relating to the excavation of or other development or improvement to land." NYLL § 861-B(1). "Contractor" includes any corporation "who engages in construction[.]" (NYLL § 861-B(2)), and includes both general contractors and subcontractors (NYLL § 861-B(3)).

9

## 5. DEFENDANTS' REQUEST FOR INJUNCTIVE RELIEF REGARDING COMMUNICATIONS WITH PUTATIVE COLLECTIVE ACTION MEMBERS IS VAGUE AND UNFOUNDED

As previously noted, the declarations submitted by the Defendants imply that the Declarants were properly compensated for all overtime hours worked.[23] In other words, after the Plaintiffs moved for notice to the collective, and before the Court ruled on the propriety of notice, the Defendants engaged *ex-parte* communications with the collective. The Declarants now appear to be under the impression that they were properly paid for all overtime hours worked. Defendants do not disclose what was said to the Declarants, where the questioning took place, whether the employee's supervisor or "boss" was present, or whether the Declarants were aware that their declarations would be made public. Defendants do not indicate whether the employees were informed that they are protected from retaliation by the NYLL and the FLSA or that their answers might affect their rights under the NYLL and the FLSA.[24]

Now Defendants want to "protect" these employees from any "abuse of power" by Plaintiffs' counsel.[25] Defendants have admitted to unsupervised communications with putative collective action members regarding the merits of their overtime claims, and have submitted declarations that may adversely affect the Declarants' entitlement to relief. Defendants are not on strong footing when they suggest that Plaintiffs' counsel might engage in "abusive communications." Nor have they adequately described or shown any entitlement to injunctive

---

[23] *See e.g.* Canales Decl. ¶ 14 ("When I work over forty (40) hours in a week, I am paid for those hours at an overtime rate." (ECF No. 88, 14); Ramirez Decl. ¶ 17 ("I am paid for overtime hours from Kelco Construction and ELM."); Narvaes Decl. ¶ 13 ("Depending on the job, I work overtime hours on Saturday and am paid an overtime rate.").

[24] Defendants cannot obtain via a declaration what could otherwise not be obtained by a release. In other words, obtaining factual concessions from current employees which may prejudice their recovery under the FLSA is little different than obtaining an extra-judicial release. Therefore, to the extent that the defendants seek to rely on these declarations to deprive declarants of recovery, we would move to strike the declarations.

[25] See Def. MOL at 24.

relief. Therefore, the request for injunctive relief regarding communications is not properly before the Court.

## CONCLUSION

Plaintiff respectfully requests that the Court grant this motion in its entirety, thereby conditionally certifying this case as an FLSA conditional collective action under 29 U.S.C. §216(b) and authorizing dissemination of notice to all Opt-In Class members.

Dated: February 13, 2023
       Huntington, New York

                                      Respectfully Submitted,

                                      MOSER LAW FIRM, P.C.

                                      _____
                                      By: Steven J. Moser (SM 1133)