# GRAE & GRAE LLC

The Law Firm                                                                 www.graelaw.com

**Previn A. Waran**
**Partner**
The Equitable Building
120 Broadway
28th Floor
New York, NY 10271
Tele: (212) 221-8763
pwaran@graelaw.com

May 23, 2023

**VIA ECF**
The Honorable Stewart D. Aaron, U.S.M.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1970
New York, New York 10007

Re:    <u>**Alvarez Chicas et al. v. Kelco Construction, Inc. et al**</u>. – 1:21-cv-09014-PAE-SDA

Dear Judge Aaron:

The undersigned's law offices are counsel for Defendants Kelco Construction, Inc. ("Kelco"), E.L.M. General Construction Corp., Kelco Landscaping, Inc., John Kelly, and Joseph Provenzano (collectively, the "Defendants") in connection with the above-referenced action. We write, in response to Plaintiffs' letter motion for the convening of a conference before Your Honor, and to apprise the Court of certain troubling developments of which Defendants have been made aware, and which strongly suggest impropriety on the part of Plaintiffs' counsel, Steven J. Moser, Esq. ("Attorney Moser"), in connection with the opt-in process.

## I.    The Putative Collective Members' Cell Phone Numbers.

As an initial matter, although the Court, in its Opinion and Order dated February 19, 2023, D.E. 101 (the "Order"), directed Defendants to produce Plaintiffs, *inter alia*, each putative collective member's cell phone number, the Court also denied that portion of Plaintiffs' conditional certification motion that sought leave to transmit notice of the collective action's pendency to putative collective members via text message. *Id*. at 11-12. In so holding, Your Honor observed, in relevant part, as follows:

> The courts in this District do not permit notice by text message as a matter of course. Generally, courts allow such dissemination where "the nature of the employer's business facilitated a high turnover rate among employees." In the present case, **Plaintiffs make no showing of need that provides an adequate basis for the Court to permit text messaging in addition to the notice by first class mail and email authorized [herein] above**. Thus, the Court shall not permit notice by text message. In addition, the Court denies Plaintiffs' request for an Order granting

Plaintiffs' counsel leave to send a text reminder 30 days before the close of the Opt-In Period.

*Id.* at 12 (internal citations omitted) (emphasis added).  The Court having denied Plaintiffs' request for leave to notice putative collective members via text message, Defendants found curious the Order's inclusion, among the categories of information to be furnished by Defendants, of the putative collective members' cell phone numbers.  Indeed, it is hard to conceive of a reason for which Plaintiffs' counsel would need such information in the absence of such leave, which, again, was denied precisely because of Plaintiffs' failure to demonstrate a need therefor.

The foregoing notwithstanding, the undersigned's recent conversations with Defendants' representatives again confirmed that which Attorney Moser alleges to be fiction: that Defendants are simply not in possession of any more putative collective members' cell phone numbers than have already been produced.  This should come as no surprise, of course, insofar as many rank-and-file construction laborers are foreign nationals whose presence within the United States is of dubious legality, and, as such, are naturally skeptical about disclosing any personal information that they feel might jeopardize their ability to remain in the country.  As such, while Defendants routinely request that their laborers provide them their cell phone numbers, they are loathe to pressure them to do so when such information is not freely given.

Separately, but no less importantly, while Defendants had no intention of disobeying the Court's directives, and were otherwise willing to again review their records for any cell phone numbers that had yet to be provided, the revelation to them of certain questionable conduct on the part of Attorney Moser in connection with the opt-in process, as described in greater detail, *infra*, led them to defer the undertaking of that exercise.

## II.      **Potential Misconduct on the Part of Attorney Moser**.

During the parties' telephonic meet-and-confer on April 27, 2023, Attorney Moser demanded that Defendants forthwith produce to him the cell phone numbers for all putative collective members for whom such information had yet to be furnished.  The undersigned responded by advising Attorney Moser that the timing of his demand was, indeed, uncanny, as the undersigned had just been advised, earlier that same day, that not only had certain opt-in plaintiffs met with difficulty in attempting to procure, via Attorney Moser, their withdrawal from the collective action, but also that multiple of Defendants' laborers reported having received calls from Attorney Moser, or others purporting to act on his behalf, soliciting them to join the collective action.  As concerns the former, Defendants have learned that one such opt-in plaintiff, who had no intention of joining the action, but appears to have inadvertently done so after having been told by an unknown third party that he was required to complete and return the opt-in form in order to confirm to Plaintiffs' counsel his receipt thereof, contacted Attorney Moser in order to request that he be removed from the case, only to be told that he could not do so absent his appearance, in person, at Attorney Moser's offices for purposes of signing the necessary paperwork.

When the undersigned communicated this information to Attorney Moser during the April 27, 2023, call, indicating that, if true, Defendants would consider such conduct to be improper and in bad faith, Attorney Moser adamantly denied the truthfulness of that account.  Flatly belying

Attorney Moser's denial, however, are the photographs appended hereto, collectively, as **Exhibit A**, which were voluntarily provided by the withdrawing opt-in plaintiff in question, Alex Manzanares ("Mr. Manzanares"), and wherein Attorney Moser can be seen preparing, on the hood of his car, and in handwritten pen no less, the necessary withdrawal form.  Only more stunning, perhaps, is the fact that Attorney Moser would require Mr. Manzanares to appear in person at his offices, given his claim that the putative class members, many of whom do not own their own motor vehicles, rely on Defendants' informal ride-share in order to commute to the project sites to which they have been assigned.  Defendants would respectfully submit that this was a tactical decision on Attorney Moser's part that was intended to deter, or otherwise render more difficult, Mr. Manzanares's withdrawal from the collective action.  Still further, although Mr. Manzanares signed the handwritten withdrawal form on May 6, 2023, he remains a party to the action, Attorney Moser having never thereafter filed with the Court the necessary withdrawal form.  Similarly, another opt-in plaintiff, Yime (Jimmy) Hernandez ("Mr. Hernandez"), wrote to Attorney Moser on April 12, 2023, stating that he wished to withdraw from the lawsuit, and no longer wanted Attorney Moser to represent him.  A true and correct copy of Mr. Hernandez's April 12, 2023, correspondence is annexed hereto as **Exhibit B**. Once again, however, and despite the passage of more than one month from the transmission of that request, Attorney Moser has yet to file the necessary withdrawal form for Mr. Hernandez.

Most recently, Kelco has been advised by Yuri Velasquez, Javier Linares, and Jose "Mori" Jimenez, all of whom are Kelco laborers, that they were visited at their homes by a Caucasian male, who pressured them to join the action, and, still further, that Opt-In Plaintiff Ramon Romero has been collecting and forwarding to Attorney Moser, at his request, putative collective members' cell phone numbers.  Indeed, multiple of Defendants' laborers have reported receiving calls from third parties urging them to join the action.  All of this would appear to strongly suggest that Attorney Moser is improperly soliciting putative members of the collective to join the action.

### III.   Defendants Have Not Engaged in Any Retaliation.

Simply put, Defendants have not engaged in any retaliation.  Indeed, and as Attorney Moser acknowledges, the opt-in plaintiff identified by him, Irbin Hernandez Gomez, clearly did not accord any weight to Mr. Paglinco's unauthorized statements concerning his ability to avail himself of the ride-share, and was never prevented from doing so, and any and all other allegations are littler more than overblown hyperbole.

### IV.   Conclusion.

Based on the deeply troubling circumstances described herein, no only should Plaintiffs be denied the relief sought via their letter motion, but Defendants must be permitted to take discovery from, and inquire of, each opt-in plaintiff, as well as their remaining laborers, whether they received any improper solicitations from Attorney Moser, or others acting at his behest, to join the collective action.  Further, Defendants reserve the right to move this Court for appropriate relief with respect to any misconduct described herein or hereafter discovered.

3

Respectfully submitted,

Previn A. Waran, Esq.

cc:     All counsel of record (*via ECF*).