UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARLOS ALVAREZ CHICAS, ALONSO VILLATORO, MISAEL ALEXANDER MARTINEZ CASTRO, ANGEL MARTINEZ, EDWIN ULLOA MOREIRA and MATEO UMAÑA individually and on behalf of all others similarly situated,

                        Plaintiffs,

- *against* -

KELCO CONSTRUCTION, INC., KELCO LANDSCAPING, INC., E.L.M. GENERAL CONSTRUCTION CORP. D/B/A KELLY'S CREW, JOHN KELLY and JOSEPH PROVENZANO,

                        Defendants.

**Case No. 21-cv-09014 (PAE)(SDA)**

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
5 E. Main Street
Huntington, NY 11743
631.824.0200
steven.moser@moserlawfirm.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**PROCEDURAL HISTORY** .................................................................................................................. 1

**SUMMARY OF THE ALLEGATIONS IN THE TAC** .................................................................... 2

**ARGUMENT** ........................................................................................................................................ 5

    1.    THE PLAINTIFFS WERE ENGAGED IN PUBLIC WORK ........................................... 5

        1.1.    The Defendants admitted in a prior lawsuit that work performed at the locations identified by the Plaintiffs herein was "public work" .............................................................................. 5

        1.2.    Even if such admission were not made, the Defendants' suggestion that it can be reasonably inferred that work performed at the locations identified by the Plaintiffs was not "Public Work" is without merit ............................................................................................................. 6

    2.    THE CASES CITED BY DEFENDANTS REQUIRING SPECIFICITY IN PLEADING A BREACH OF CONTRACT CLAIM ARE INAPPLICABLE ........................................... 8

    3.    IT CAN BE INFERRED THAT PUBLIC WORKS CONTRACTS CONTAIN A PROVISION REQUIRING THE PAYMENT OF PREVAILING WAGES. ........................ 9

    4.    KELCO LANSCAPING, INC. AND KELCO CONSTRUCTION, INC. ARE ALTER-EGOS AND FORM PART OF A SINGLE INTEGRATED ENTERPRISE ............................ 11

    5.    IN THE EVENT THAT THE COURT BELIEVES THAT THE CLAIMS ASSERTED IN THE TAC DO NOT MEET THE PLEADING STANDARD, LEAVE TO AMEND SHOULD BE GRANTED. ................................................................................................................. 13

**CONCLUSION** ................................................................................................................................. 14

## PROCEDURAL HISTORY

This action was commenced on November 2, 2021. The original complaint was filed by two representative plaintiffs – Carlos Alvarez Chicas ("Alvarez") and Alonso Villatoro ("Villatoro") – to recover, *inter alia,* overtime wages and prevailing wages as third party beneficiaries of public works contracts entered into by Kelco Construction, Inc. Defendants answered the complaint on January 18, 2022. Defendants then offered to mediate early, and a stay was issued. Mediation was ultimately unsuccessful.[1]

On June 4, 2022, the Plaintiffs forwarded a proposed First Amended Complaint ("FAC") to the Defendants. This complaint added Misael Alexander Martinez Castro ("Castro"), Angel Martinez ("Martinez"), Edwin Ulloa Moreira ("Ulloa") and Mateo Umaña as named Plaintiffs. On December 14, 2022, before Defendants answered the FAC, Plaintiffs furnished a proposed Second Amended Complaint ("SAC") to the Defendants which added Kelco Landscaping, Inc. as a defendant.

The prevailing wage allegations in the FAC furnished on June 4, 2022 contained the same level of specificity as the prevailing wage allegations in the original complaint, and the prevailing wage allegations contained in the SAC furnished on December 14, 2022 were virtually identical to those contained in the FAC furnished on June 4, 2022.

On January 20, 2023, more than one year after answering a complaint similar in form, and after twice consenting to an amendment without voicing any concerns regarding the level of specificity of pleading, defendants moved to dismiss the prevailing wage claims.

---

[1] As of today, Defendants have not furnished any contracts for work performed by the Plaintiffs either in response to the original requests served on March 17, 2022 or in response to the supplemental requests served in January 2023.

1

On February 16, 2023 Plaintiffs offered to "amend the complaint to resolve the pleading issues" and sought to "explore the possibility of resolving [Defendants' concerns] without court intervention." Defendants stated that "[b]efore consenting to any amendment, [they would] need to see the proposed amended complaint." Defendants were furnished with the proposed TAC on March 14, 2023.[2]

On March 23, 2023 defendants' counsel sent an email stating:.

> We have reviewed the proposed amendments. In an effort to try to extend some good will, we will agree to not contest your filing of the [third] amended complaint even though we think it is still deficient in a number of respects.[3]

Plaintiffs immediately asked Defendants for clarification as to whether, in light of the proposed amendments, they intended on challenging the TAC based upon a pleading deficiency or futility.[4] Despite Defendants' offer of "good will", they did not respond. Three months later, Defendants filed a motion to dismiss, stating, in part:

> Plaintiffs were amply noticed of, but consciously declined to cure, the defects from which the SAC suffered, doubling down on those self-same defects in the TAC, the Court should not countenance such willful disregard of applicable pleading standards, and ought to dismiss the Complaint, in its entirety, as against Kelco Landscaping, and the fourth causes of action thereof, as against all Defendants, with prejudice.[5]

## SUMMARY OF THE ALLEGATIONS IN THE TAC

The allegations relating to prevailing wages are as follows:

> 5. Kelco Construction entered into numerous contracts in which it agreed to pay prevailing wages to employees. Kelco Construction then used ELM to pay employees for work performed under these prevailing wage contracts at rates below the prevailing rates. As a result, Defendants failed to pay Plaintiffs the prevailing wages to which they are entitled as third party beneficiaries.

---

[2] See Moser Declaration ¶¶
[3] See Moser Declaration ¶¶
[4] See Moser Declaration ¶¶
[5] Defendants' Memorandum of Law in Support of Motion to Dismiss, at 3.

2

64. During his employment Alvarez performed work exclusively under prevailing wage construction contracts, including: Central Park [and] Brooklyn Botanical Gardens.

71. Defendants did not pay Alvarez time and a half for hours worked in excess of 8 hours each workday as required by the prevailing wage contracts.

72. Defendants did not pay Alvarez time and a half for hours worked in excess of 40 hours each workweek as required by the prevailing wage contracts.

73. For example, for the week ending March 2, 2019 Alvarez worked at least 47 hours. Kelco Construction paid Alvarez for 33 hours (32 regular hours at $46.35 per hour, and 1 hour at an overtime rate of $69.525 per hour). ELM also paid Alvarez a drive time bonus of $180. The Defendants failed to pay Alvarez for at least 6 overtime hours worked at one and one half times his regular rate of pay and failed to pay Alvarez for 8 regular hours worked at his agreed upon Kelco Construction rate ($46.35/hour). The drive time bonus was not included in the Plaintiff's regular rate of pay for the purposes of computing Plaintiff's overtime rate. Upon information and belief, the work performed during this workweek was performed pursuant to a prevailing wage contract, and plaintiff was entitled to prevailing wages of $46.35 per hour plus supplemental benefits for working fewer than 8 hours a day and 40 hours per week, and prevailing wages of $69.525 plus supplemental benefits for all hours worked in excess of 8 hours a day and 40 hours a week. Plaintiff worked more than 10 hours each day this workweek. Defendants did not pay the Plaintiff time and half for hours worked in excess of 8 each day, and did not pay one and one half times the prevailing wage for all overtime hours worked.

77. During his employment, Villatoro performed work exclusively under prevailing wage contracts, including: The Brooklyn Botanical Gardens[,] Queens Plaza Park[,] Domino Park[,] and Brooklyn Bridge Park."

82. Defendants did not pay Villatoro time and a half for hours worked in excess of 8 hours each workday as required by the prevailing wage contracts.

83. Defendants did not pay Villatoro time and a half for hours worked in excess of 40 hours each workweek as required by the contracts.

85. For example, for the week ending November 2, 2019, Villatoro worked at least 49 hours. Kelco Construction paid Villatoro for 35 hours (32 hours at $46.85 per hour, and 3 hours at an overtime rate of $70.275 per hour). ELM also paid Villatoro a drive time bonus of $240.00. Defendants failed to pay Villatoro for at least 6overtime hours worked at one and one half times his regular rate of pay and failed to pay Villatoro for 8 regular hours at his agreed upon Kelco Construction rate (46.85/hour). The drive time bonus was not included in the Plaintiff's regular rate of pay for the purposes of computing the Plaintiff's overtime rate. Upon information and belief, the work performed during this workweek was performed

3

pursuant to a prevailing wage contract, and plaintiff was entitled to prevailing wages of $46.35 per hour plus supplemental benefits for working fewer than 8 hours a day and 40 hours per week, and prevailing wages of $69.525 plus supplemental benefits for all hours worked in excess of 8 hours a day and 40 hours a week. Plaintiff worked more than 10 hours each day this workweek. Defendants did not pay the Plaintiff time and half for hours worked in excess of 8 each day, and did not pay one and one half times the prevailing wage for all overtime hours worked.

89. Castro performed work upon numerous prevailing wage contracts...including Central Park (work included planting, laying mulch, sod installation), Columbus Circle (planting, making beds for plants, cement work, installing mulch, and installing pavers), Hudson Yards (planting and other landscaping), and Dumbo/Brooklyn Bridge Park (planting and landscaping).

91. Martinez performed work upon numerous prevailing wage contracts while employed by the Defendants, including Columbus Circle (construction and installing pavers), Morningside park (building walkways and planting trees), Hudson Yards (planting, installing sod, and maintenance), and Brooklyn Botanical Garden (planting, cutting grass and maintenance).

93. Ulloa performed work upon numerous prevailing wage contracts while employed by Defendants including Frank Golden Park (leveling the field and installing turf), the Metropolitan Museum of Art (planting large trees) [and] The Museum of Natural History (maintenance and sod installation).

[93.] Umaña was employed by Defendants from approximately March 2017 until approximately September 2019. Umana performed work upon prevailing wage contracts while employed by the Defendants, including the Queens Museum of Science (landscaping and maintenance).

98. Defendants did not pay [Castro, Martinez, Ulloa or Umana (the "ELM Plaintiffs") prevailing wages for work performed pursuant to prevailing wage contracts. Instead, they paid the ELM plaintiffs between $20-30 per hour. Upon information and belief, the prevailing wages to which the Plaintiffs were entitled were in excess of $45 (not including supplemental benefits). Plaintiffs worked in excess of 10 hours each day (including travel time), but were not paid 1 ½ times the prevailing wage for hours worked in excess of 8 hours each day and 40 hours each week.

146. Upon information and belief, the Defendants entered into valid and binding contracts which contained a promise to pay prevailing wages to the Named Plaintiffs and the class.

147. The Named Plaintiffs and the class were intended beneficiaries of the contracts entered into by the Defendants.

4

148. Defendants failed to pay the Named Plaintiffs and the class prevailing wages for all hours worked, time and a half the prevailing wage for all hours worked in excess of 8 hours each day, and time and a half the prevailing wage for all hours worked in excess of 40 each workweek.

**ARGUMENT**

**1. THE PLAINTIFFS WERE ENGAGED IN PUBLIC WORK**

**1.1. The Defendants admitted in a prior lawsuit that work performed at the locations identified by the Plaintiffs herein was "public work"**

Defendants suggest that work performed by them at Lincoln Center, the Metropolitan Museum of Art, the American Museum of Natural History, Brooklyn Bridge Park and Hudson River Park was not public work.[6] However, Defendants admitted in a prior action that work performed by Kelco at Lincoln Center, the Metropolitan Museum of Art, the Museum of Natural History, Brooklyn Bridge Park and Hudson River Park was indeed "public work." More specifically, in the case of *Henriquez v. Kelco Landscaping, Inc.,* et al., 12-cv-6233(ADS)(GRB), the plaintiffs alleged:

> 54. Upon information and belief, KELCO entered into a number of public works contracts which called for KELCO to perform landscape construction work at various locations in New York (the "Public Works Contracts").

Defendants answered as follows:

> 54. Kelco admits the allegations contained in paragraph 54 of the Complaint.

Plaintiffs also alleged:

> 55. The Public Works Contracts included but are not limited to projects upon which KELCO performed work at Brooklyn Bridge Park[7], Hudson River Park, Central Park[8], High Line, Washington Square Park, Hanover Square Park, Brooklyn Botanical Gardens[9], Fulton Ferry, United Nations, Lincoln Center, Museum of Modem Art[10], Bryant Park, Metropolitan Museum of Art[11] and Citifield.

---

[6] See Def. MOL, at 16.
[7] Plaintiffs Villatoro and Castro allege that worked at the Brooklyn Bridge Park.
[8] Plaintiffs Alvarez and Castro allege that they performed work at Central Park.
[9] Plaintiffs Alvarez, Villatoro and Martinez allege that they performed work at the Brooklyn Botanical Gardens.
[10] Plaintiff Ulloa alleges that he worked at the Museum of Modern Art.
[11] Plaintiff Ulloa alleges that he worked at worked at the Metropolitan Museum of Art.

5

Defendants answered as follows:

55. Kelco admits the allegations contained in paragraph 55 of the Complaint.[12]

While a judicial admission in a prior case is not binding on said party in a subsequent proceeding, the judicial admission may be considered as evidence in the subsequent action. *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 38 (S.D.N.Y. 2015). Furthermore, in *Henriquez*, the parties appeared before then Magistrate Judge Gary R. Brown, who in order to facilitate settlement suggested that Defendants voluntarily provide certified payroll records and time cards for public works employment by the plaintiffs who worked for Kelco Construction, Inc. Defendants submitted the certified payroll records to the Court for numerous "public works" contracts, including work performed at Brooklyn Bridge Park, Central Park, Hudson River Park, and The American Museum of Natural History.[13]

To the extent that Defendants claim that Plaintiffs did not perform work under Kelco's contracts, Plaintiffs are in possession of identification cards issued at various worksites identifying them as employees of Kelco.[14]

**1.2. Even if such admission were not made, the Defendants' suggestion that it can be reasonably inferred that work performed at the locations identified by the Plaintiffs was not "Public Work" is without merit.**

Defendants suggest that work must be contracted by a "municipality or public contracting agency of the City of New York" in order to qualify as "public work."[15] However, NYLL 220 applies broadly to "[e]ach contract to which the state or a public benefit corporation or a municipal corporation or a commission appointed to law is a party, *and any contract for public work entered*

---

[12] Relevant portions of the *Henriquez* Complaint and Answer are annexed to the Moser Declaration as Exhibits 1 & 2.
[13] Representative samples of certified payrolls from *Henriquez* are annexed to the Moser Declaration as Exhibit 3.
[14] Several examples of these IDs are annexed to the Moser Declaration as Exhibit 4.
[15] Def MOL at 16.

*into by a third party acting in place of, on behalf of and for the benefit of such public entity.*"

NYLL 220(2)(emphasis supplied).

There are more than 50 public benefit corporations which have been established by the legislature of the State of New York. One example is the Hudson River Park Trust.

> As set forth in the Hudson River Park Trust's enabling legislation, the mission of the Hudson River Park Trust is to encourage, promote and expand public access to the Hudson River, to promote water-based recreation, and enhance the natural, cultural, and historic aspects of the river from Battery Park City to West 59th Street in New York City for residents and visitors to the area. The Trust has authority over the planning, construction, operation and maintenance of Hudson River Park.[16]

Therefore, Defendants' suggestion that the Court may not infer that work performed at the Hudson River Park was not public work is without merit. Equally without merit is Defendants suggestion that work performed on or around the Metropolitan Museum of Art is not public work.

> For more than a century the City of New York and the Trustees of The Metropolitan Museum of Art have been partners in bringing the Museum's services to the public. The complex of buildings in Central Park is the property of the City,[17]

Finally, work performed upon public parks such as Central Park is "public work." Defendants cite *De La. Cruz v. Caddell Dry Dock & Repair Co.*, 2013 N.Y. Slip Op. 4842, 21 N.Y.3d 530, 975 N.Y.S.2d 371, 997 N.E.2d 1223 (N.Y. June 27, 2013). Delacruz did not set forth any standard for pleading a cause of action on behalf of third party beneficiaries for breach of a prevailing wage contract. However, Delacruz did observe that work performed on parks was "public work."

> More pertinently, given the nineteenth-century origin of the law we are concerned with, the first edition of Black's Law Dictionary defined "public works" as "[w]orks, whether of construction or adaptation, undertaken and carried out by the national, state, or municipal authorities, and designed to subserve some purpose of public necessity, use, or convenience; such as public buildings, roads, aqueducts,

---

[16] https://www.budget.ny.gov/pubs/archive/fy21/exec/agencies/appropdata/HudsonRiverParkTrust.html (last visited July 13, 2023).

[17] https://www.metmuseum.org/press/general-information/2010/an-overview-of-the-museum (last visited July 13, 2023).

7

>parks, etc." (Black's Law Dictionary 964 [1st ed 1891]; *see also* Black's Law Dictionary 1231 [2d ed 1910] [same]).

*De La. Cruz*, 2013 N.Y. Slip Op. 4842. The Court of appeals went on to hold that the language of NYLL 220 should be construed so broadly so as to include a private company's maintenance of a ferry boat. *Id.*

## 2. THE CASES CITED BY DEFENDANTS REQUIRING SPECIFICITY IN PLEADING A BREACH OF CONTRACT CLAIM ARE INAPPLICABLE

Defendants cite to numerous state court decisions to support their conclusion that Plaintiffs must (1) "identify the actual contracts themselves", and (2) cite the "specific provisions thereof that purport to have required Defendants to pay them the prevailing wage."[18] However, these cases have been held to be inapplicable as they apply CPLR § 3013:

> Some courts have required specificity in alleging that the contract contained prevailing wage terms. "In order to plead a breach of contract cause of action, a complaint must allege the provisions of the contract upon which the claim is based. The pleadings must be sufficiently particular to give the court and [the] parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved as well as the material elements of each cause of action or defense." *Maldonado*, 8 A.D.3d 348, 777 N.Y.S. 2d 730, 731 (quoting *Atkinson v. Mobil Oil Corp.*, 205 A.D.2d 719, 614 N.Y.S.2d 36 (2d Dep't 1994)". . . In the context of a § 220 breach of contract claim, identifying the project and the relevant wage provision within the contract has been held to establish the promisee's intent to benefit a third party. *See Dabrowski v. Abax Inc.*, 64 A.D.3d 426, 882 N.Y.S.2d 119, 120 (1st Dep't 2009); *Stennett v. Moveway Transfer & Storage, Inc.*, 97 A.D.3d 655, 949 N.Y.S.2d 91, 93 (2d Dep't 2012).
>
> However, these New York cases appear to be interpreting N.Y.C.P.L.R. § 3013, which states that "[s]tatements in a pleading shall be sufficiently particular to give

---

[18] Def. MOL at 13-14; Such cases include *Victory State Bank v. EMBA Hylan, L.L.C.*, 169 A.D.3d 963, 965 (2d Dep't 2019), *Peters v. Accurate Bldg. Inspectors Div. of Ubell Ent., Inc.*, 29 A.D.3d 972, 973 (2d Dep't 2006), *Maldonado v. Olympia Mech. Piping & Heating Corp., 8* A.D.3d 348, 350 (2d Dep't 2004), and *Stennett v. Moveway Transfer & Stor., Inc., 97* A.D.3d 655, 657 (2d Dep't 2012). Defendants also cite Defendants also cite *Ramos v. SimplexGrinnell LP*, 740 F.3d 852, 856 (2d Cir. 2014), a case which did not involve the standard for pleading a third party breach of contract of a prevailing wage claim, for the unremarkable proposition that "where [a] contract expressly incorporates the requirement of Section 220 of the NYLL that the contractor's workers on the project be paid prevailing wages, those workers. . .may bring common law breach-of-contract claims as third-party contract beneficiaries."

the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." Under the standard of *Iqbal*, factual allegations need only state a *plausible* claim.

*Velasquez v. Vikrant Contr. & Builders, Inc.*, No. 15-CV-2783 (RRM) (RLM), 2021 U.S. Dist. LEXIS 63430, at *18 (E.D.N.Y. Mar. 31, 2021)

In *Velazquez*, although the plaintiffs had not identified the specific contracts by number or other identifying terms, and had not quoted the specific provisions of such contracts requiring the payment of prevailing wages, the court concluded:

> Plaintiffs have alleged the facts necessary to a prevailing wage claim in non-conclusory, non-threadbare fashion. They state that plaintiffs worked on State- and City-funded construction contracts to which [Defendant] was a party. They claim that the State prevailing wage rate governed these contracts, and that defendants failed to pay them accordingly. As workers on these contracts, they claim they were intended beneficiaries, which is a non-controversial statement of New York State law, as already discussed. They have thus stated all facts relevant to their third-party beneficiary theory. Discovery will quickly establish or disestablish plaintiffs' factual entitlement to relief, at least as far as these contracts are concerned.

*Velasquez*, 2021 U.S. Dist. LEXIS 63430, at *18-19

On similar facts, in *Little v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 615 (S.D.N.Y. 2016), Judge Engelmayer noted,

> The [prevailing wage] contracts themselves are not attached to the Complaint, but plaintiffs allege that they "obligated Defendants to pay Plaintiffs . . . at or above the local prevailing wage rates." Compl. ¶ 40. Defendants, who unlike plaintiffs are signatories to the contracts, have not come forward with the contracts—which would have been cognizable as integral to the Complaint, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)—to contradict this allegation. The Court, therefore, must and does accept the allegation as true.

*Little v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 615 (S.D.N.Y. 2016).

### 3. IT CAN BE INFERRED THAT PUBLIC WORKS CONTRACTS CONTAIN A PROVISION REQUIRING THE PAYMENT OF PREVAILING WAGES.

Although "plaintiffs asserting their rights to prevailing wages as third-party beneficiaries have typically submitted the underlying contracts to the courts hearing their claims", the failure to

submit the contract does not preclude recovery. *See* Ramos v. SimplexGrinnell LP, *796 F. Supp. 2d 346, 365 (E.D.N.Y. 2011)*. In *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 362 (E.D.N.Y. 2011), plaintiffs were unable to furnish all of the prevailing wage contracts under which the they allegedly performed work. Defendants moved for summary judgment, arguing that the breach of contract claims could not be proved without the contracts themselves. Plaintiffs responded that the contracts themselves were "not needed because New York state law requires that all public works contracts contain a prevailing wage provision", and that "[w]ith respect to the projects for which they do not have contracts" they would "rely primarily upon this statutory requirement to prove their contractual entitlement to prevailing wages." *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 362 (E.D.N.Y. 2011).

> Magistrate Judge Gold denied defendant's motion for summary judgment:
>
> In light of the particular circumstances of this case, I conclude that defendant may not obtain summary judgment on plaintiffs' third-party beneficiary claims on the grounds that plaintiffs will not be offering the underlying contracts in evidence.

*Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 362-63 (E.D.N.Y. 2011)

The court began by noting that "the law mandates that defendant's public works contracts contain prevailing wage provisions" and furthermore that "[w]hen parties enter into a contract, they are 'presumed or deemed to have contracted with reference to' applicable existing laws. 11 WILLISTON ON CONTRACTS § 30:19 (4th ed.)." *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 362-63 (E.D.N.Y. 2011)(collecting cases). "Thus, and in particular absent any evidence to the contrary, I presume that all of defendant's public works contracts either explicitly or implicitly provide for payment of prevailing wages as required by Labor Law § 220." *Id.* Moreover,

> There is no need to parse the particular language of any one contract's prevailing wage terms to determine whether defendant breached it; the provision is either present or not. . .Accordingly…evidence of the statutory mandate that prevailing wages be paid on public construction projects. . .may be admitted to support the inference that all of defendant's public works contracts contain prevailing wage

provisions. Defendant, of course, is free to challenge whether the class is entitled to prevailing wages on any particular project by submitting any contracts that it contends provide that prevailing wages need not be paid.

*Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 365 (E.D.N.Y. 2011).

The New York City Prevailing Wage Schedule calls for the payment of prevailing wages to those performing landscaping work, whether as part of a larger construction project or standing alone.[19] As the work performed by the Plaintiffs herein was "public work", it may be inferred and even presumed that each contract for performance of such work contained a provision requiring the payment of prevailing wages to the Plaintiffs.

### 4. KELCO LANSCAPING, INC. AND KELCO CONSTRUCTION, INC. ARE ALTER-EGOS AND FORM PART OF A SINGLE INTEGRATED ENTERPRISE

Plaintiffs allege that "Kelco Construction, Kelco Landscaping and ELM (the "Corporate Entities") form part of a single integrated enterprise (the "Kelco Enterprise"), and therefore constitute a single employer for the purposes of FLSA and NYLL liability." TAC 30. "Upon information and belief, the Corporate Entities share interrelated operations, common management, centralized control of labor relationships, and common ownership." TAC 31. "Upon information and belief, the Corporate Entities are commonly owned, operated, and managed by Defendants John Kelly ("Kelly") and Joseph Provenzano ("Provenzano")." TAC 32. "The Corporate Entities share a common principal place of business." TAC 33. "The Corporate Entities are involved in the business of landscaping and construction." TAC 34.

Aside from the obvious – that Kelco Landscaping and Kelco Construction share the same name,

---

[19] See Excerpts from the Office of the Comptroller, City of New York § 220 Prevailing Wage Schedule, annexed to the Moser Declaration as Exhibit 5.

11

(A) On February 16, 2016 John Kelly submitted an application for a home improvement license for Kelco Landscaping, Inc. to the Suffolk County Department of Labor, Licensing and Consumer Affairs.[20] In the application, which was affirmed to be true by Mr. Kelly, he acknowledges:

(i) That he is the President, Vice President, and Secretary-Treasurer of Kelco Landscaping, Inc.

(ii) Tha he is a principal officer in Kelco Construction, Inc.

(iii) That both Kelco Construction, Inc. and Kelco Landscaping, Inc. are located at the same address.

(iv) That Kelco Landscaping, Inc. "Installs plant material, sod, soil, seed, and Landscaping Services."

(v) When asked to describe his experience on the Kelco Landscaping, Inc. application, he writes:

30 years working in the landscaping industry. Started out on residential landscaping and built the company to a $40 million/year business doing major landscape construction projects in NYC. I've worked for NYC Parks Department, battery Park city, Brooklyn Bridge development Corp., Governors Island, Brooklyn botanical Gardens, World Trade Center, USTA tennis center, Metropolitan Museum, Museum of modern Art, Hudson River Park, United Nations, Central Park Conservancy, many, many high profile projects. **Our services** include installing plant material, large trees, sod, soil, any and all landscaping materials. We've built playgrounds, parks, ball fields, gardens and more. Extensive background in all aspects of landscape construction.

(B) Information received from the New York State Insurance Fund Shows that Kelco Construction, Inc. and Kelco Landscaping, Inc. employees are covered under the same workers' compensation insurance policy.[21]

---

[20] The application for Kelco Landscaping, Inc. is annexed to the Moser Declaration as Exhibit 6.
[21] Documents obtained from the New York State Insurance Fund are annexed to the Moser Declaration as Exhibit 7.

(C) According to the Federal Motor Carrier Safety Administration, Safety and Fitness Electronic Records, Kelco Landscaping, Inc. does business as "Kelco Construction."[22]

(D) Vehicles used by Kelco Construction, Inc. say "Kelco Landscaping."[23]

(E) The settlement agreement in the Henriquez matter was signed by both John Kelly and Joseph Provenzano on behalf of the corporate defendants Kelco Construction, Inc. and Kelco Landscaping, Inc.[24]

(F) Both Kelco Construction, Inc. and Kelco Landscaping, Inc. share the same logo and name – a Green Tree followed only by the word "Kelco."[25]

## 5. IN THE EVENT THAT THE COURT BELIEVES THAT THE CLAIMS ASSERTED IN THE TAC DO NOT MEET THE PLEADING STANDARD, LEAVE TO AMEND SHOULD BE GRANTED.

This is the first time that the Court will rule on the issues presented in Defendants' Motion to Dismiss. While the Defendants suggest that any failure to cure defects has been willful because *they* "put the plaintiffs on notice", it is not the Defendants who ultimately decide whether or not the claims have been sufficiently pled or in what way they may be amended in order to meet the applicable pleading standard.

Therefore, to the extent that the Court finds that the allegations have not been sufficiently pled, Plaintiffs respectfully request that the dismissal be without prejudice.

---

[22] *See* Exhibit 8 to the Moser Declaration.
[23] Photographs of the vehicles are annexed to the Moser Declaration as Exhibit 9.
[24] The first and last page of the Henriquez settlement agreement are annexed to the Moser Declaration as Exhibit 10.
[25] See Exhibit 11 (taken from Kelco Construction's website) and Exhibit 12 (a letter submitted by John Kelly on behalf of Kelco Landscaping, Inc. to the NYSIF).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Defendants' motion be denied in its entirety, and in the alternative that any dismissal be without prejudice.

Dated: July 13, 2023
      Huntington, New York

                          Respectfully Submitted,

                          MOSER LAW FIRM, P.C.

                          */s Steven J. Moser*
                          By: Steven J. Moser (SM 1133)